**Angel L. ENRIQUEZ and Miguel Cura,**
**Appellants,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 19144.**

United States Court of Appeals
Ninth Circuit.

Nov. 6, 1964.

Elinor Chandler, Los Angeles, Cal., for appellant Angel Enriquez.

David C. Marcus, Los Angeles, Cal., for appellant Miguel Cura.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Chief, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before HAMLEY, KOELSCH and BROWNING, Circuit Judges.

KOELSCH, Circuit Judge.

The Federal Grand Jury returned a six count indictment against the defendants, Enriquez and Cura, charging them with violations of 21 U.S.C. § 176a (marihuana). Four of the counts (I, II, III and IV) named Enriquez alone, while the remaining two (V and VI) were directed against the defendants

---

1. One Oscar Rosario was also named as a defendant in Count IV; however, the court dismissed the charge against him.

jointly.[1] The jury found defendants guilty as charged and the court sentenced them to serve terms of seven years' imprisonment on each count, the sentences to run concurrently. Defendants have appealed. Briefly stated, the facts surrounding the offenses are these:[2]

On the evening of March 20, 1963, Los Angeles Deputy Sheriff Landry approached Enriquez in an attempt to arrange the purchase of large quantities of marihuana. Enriquez, however, said that before any deal was made he would have to talk to his "connection."[3] At the meeting the following day, Landry offered to buy 25 pounds of marihuana but demanded a sample, which Enriquez promised him. Accordingly, the same evening Enriquez met Landry on a Los Angeles street, where he handed over a small white envelope containing marihuana. It appeared to be satisfactory and the two then arranged to consummate the proposed 25 pound sale later that evening. At the appointed time, Landry picked up Enriquez, who gave directions where to drive. On arrival, Enriquez left the automobile but returned almost immediately, carrying a box. After examining the contents, and finding it contained marihuana, Landry paid Enriquez $1,725.00 and asked when he could buy more. Enriquez declared that "the man" or the "connection" could supply large quantities, as he had at least 600 pounds on hand. After some discussion, Landry agreed to buy 300 pounds for $20,500.00.

Before the time for delivery, however, Enriquez telephoned Landry to express some concern about a particular automobile that he (Enriquez) had observed cruising the neighborhood during their previous meetings. (This automobile, in fact, carried other officers who were working with Landry and who witnessed the meetings previously and subsequently mentioned). Landry sought to reassure Enriquez, but the latter insisted that he would have to talk to "the man" about the matter. Late that evening, Enriquez again called, and these new arrangements were made: Landry would provide a panel delivery truck, which Enriquez would take and load. Afterward Landry, accompanied by his wife, would drive to a selected rendezvous where he would pay the money and take charge of the truck. His wife would drive the automobile away. This arrangement proceeded according to plan.

When Landry, accompanied by Deputy Sheriff Winona Franz (posing as his wife) reached the place, Enriquez was there waiting. Cura was standing across the street, but the truck was nowhere in sight. Enriquez entered Landry's automobile, sitting on the front seat with Landry and his "wife"; as Enriquez was handed the money, Cura approached and spoke to him. Enriquez told Landry where to find the truck, but Landry took back the money and said "That was not the bargain," that he would have to check the truck itself before Enriquez received the money. Following further discussion with Enriquez, Cura, who had the keys to the truck started to enter the rear of the automobile. But Landry, as would any experienced peace officer, flatly refused to allow a stranger to sit behind him, even though Enriquez repeatedly protested "Danny, this is 'the man,' he is all right." Final-

2. We of course view the evidence in a light most favorable to the prosecution. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Babson v. United States, 330 F.2d 662, 663 (9th Cir. 1964), cert. den. 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1045.

3. Also variously referred to as "the man." Landry testified to the meaning of "connection" as follows:

"The term 'connection' means the person who has access or who has the particular narcotics; that is, the narcotics that are to be purchased. He is the man that is handling this particular narcotics." At another point, deputy Landry testified that "In talking with people who deal in narcotics, when you utilize the word 'the man' it means the man who is the person who has the narcotics, control of the narcotics." When asked if the expression "the man" and the "connection" were used interchangeably, Landry replied that they were.

ly, Cura gave Enriquez the truck keys and followed Landry in Enriquez's automobile to the place several blocks distant where the truck was parked. Enriquez then gave the keys to Landry, who unlocked the truck and saw lying on the floor several large bags and boxes of marihuana. Landry then gave a signal and the sheriff's deputies and federal officers, who had been following the group at a discreet distance, closed in and made the arrests.

On appeal Cura questions the sufficiency of the evidence to support the convictions. In particular, he asserts that there was no proof of his possession of the marihuana, nor of his knowledge that the truck was loaded with marihuana. The point is really not available to him. He did move for a judgment of acquittal at the conclusion of the government's case, but when that motion was denied he submitted defensive evidence and did not thereafter renew it. Hardwick v. United States, 296 F.2d 24 (9th Cir. 1961). However, as our statement of the case suggests, we have carefully reviewed the record and there found abundant evidence to tender a factual issue on both matters.

What appear to be Cura's two principal points apply commonly to the validity of his conviction on both of the counts with which he was charged. These points are: (a) that he was not afforded the effective assistance of counsel in the preparation and trial of the case, and (b) that certain evidence highly prejudicial in nature was erroneously admitted. Neither point has merit.

(a) Cura's counsel was retained. He had been an attorney for over twenty years. For the first five of them he was a member of the staff of the City Attorney of Los Angeles and had appeared in court almost daily prosecuting cases; since that time he has continuously carried on a successful private practice there, devoted almost exclusively to the defense of persons charged with the commission of criminal offenses. And the record in this case clearly discloses a vigorous defense conducted by capable counsel having a knowledgeable grasp of the facts and a keen desire for the welfare of his client. We fully agree with the able trial judge who, in appraising the quality of the defense effort and the competence of counsel, declared "[t]he case was well tried * * *"

In reaching this conclusion we have not overlooked the fact that during the trial Cura expressed to the judge considerable dissatisfaction with his lawyer, and asked for (and was allowed) time to make a change. He did in fact then engage his present counsel, but the latter declined to assume the defense at that stage of the proceedings and merely acted as associate counsel. Present counsel is highly critical of the efforts of his predecessor. Such an attitude, unfortunately, is not unusual in the legal profession; but as we observed not long ago in Audett v. United States, 265 F.2d 837, 844 (9th Cir. 1959), "After all, there are few trial lawyers who, on examining the record of a trial critically, would not say that 'they might have done better'. But such surmises would not warrant this Court in branding the defense in this case as so inadequate as to amount to denial of the right to counsel."

(b) The evidence complained of by Cura consisted of declarations made by Enriquez and testified to by Landry. They were to the effect that he (Enriquez) had a confederate whom he referred to variously as "the man" and "the connection."

As we understand the argument, these declarations, although proper as to Enriquez, were inadmissible hearsay in the case against Cura; further it is asserted the district attorney, during his argument to the jury, reiterated the declarations and "compounded" their prejudicial effect.

Since Enriquez and Cura were charged jointly in two counts, and the case was tried on the theory that they were cooperating together to perpetrate the alleged crimes, these declarations, made as they were, during the preparation and

commission of those crimes, were admissible against Cura under an exception to the hearsay rule [Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790], for there was substantial proof, aside from Enriquez' statements, of the existence of a conspiracy. Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Ilseng v. United States, 120 F.2d 823 (9th Cir. 1941) cert. den. 314 U.S. 665, 62 S.Ct. 125, 86 L.Ed. 532; Nudd v. Burrows, 91 U.S. 426, 23 L.Ed. 286. To illustrate: Several officers observed Cura driving the truck immediately before the meeting with Landry; both officers Landry and Franz saw the keys in his possession and their testimony shows that at the meeting Cura played a major role in the transaction. While it is true that Landry gave much of this testimony before a sufficient foundation had been laid, the order of proof was of little importance, for the matter was one committed to the discretion of the trial judge and evidence was eventually introduced tending to show the relationship between Cura and Enriquez. Anthony v. United States, 256 F.2d 50 (9th Cir. 1958).

■ Cura's remaining point, and the sole error specified by Enriquez, centers on an instruction given by the court with reference to Count V, the sale count.[4]

As noted earlier in the opinion, the jury found Cura guilty on Counts V and VI and Enriquez guilty on all six counts contained in the indictment; and the court imposed sentences of seven years' imprisonment on each conviction, with the provision that all sentences were to run concurrently.

It is clear that a defendant will not profit unless all convictions against him are reversed. As long as one valid conviction remains he will be required to serve a seven year sentence, regardless of any error in related convictions. Recognition of this proposition is found in the well settled rule that if the conviction on one count of a multi-count indictment is sustained and "the sentence does not exceed the maximum authorized as punishment for the offense charged in the first count, we need not consider any other count." Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692 (1929); Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), reh. den. 355 U.S. 967, 78 S.Ct. 529, 2 L.Ed.2d 542; Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959), reh. den. 361 U.S. 854, 80 S.Ct. 40, 4 L.Ed.2d 93; White v. United States, 317 F.2d 231 (9th Cir. 1963).

Thus, at this point, the most defendants could achieve would be a reversal of Count V; nevertheless, they would still be subject to valid sentences. We therefore find it unnecessary to pursue the matter.

The judgment is affirmed.

4. The instruction was a supplemental one given at the request of the jury and with the approval of counsel after the case was submitted.

It read: "the word 'sale' should be interpreted in the ordinary everyday business usage of the term" and the "[q]uestion about sale or exchange of monies constituting a sale is a question of fact to be determined by [the jury] in the light of the testimony."

The complaint is now made that the court in effect told the jurors "to interpret the word themselves." Thus, it not only gave an erroneous instruction but abdicated its judicial function to declare the law.

Defendants take the position that, in giving this instruction, the court committed plain error which we may notice under Rule 52(b). Although we find it unnecessary to resolve this issue, we fail to understand how any harm resulted from the instruction. In a similar case the Eighth Circuit has said "We think the word 'sale' in the statute which makes it unlawful to sell contraband narcotics was used in its ordinary and popular sense and that the failure of the court (although requested) to define a word so generally used and so well understood was not error." Cf. Affronti v. United States, 145 F.2d 3, 9 (8th Cir. 1944).