**James Lee ARGO, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20352.**

United States Court of Appeals
Ninth Circuit.

May 16, 1967.

Philip A. Oberg, Salinas, Cal., for appellant.

Richard C. Gormley, U. S. Atty., Henry L. Zalut, Morton Situer, Asst. U. S. Attys., Phoenix, Ariz., for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

On March 2, 1965, Argo entered a branch office of the Valley National Bank of Phoenix, Arizona, and proceeded to the window of teller Odette. After a brief wait for another customer of the bank to finish his business, Argo confronted the teller with a drawn and fully loaded revolver, shoved a paper bag at her, laid on her counter one of the bank's blank checks on which was hand printed "This is a Robbery Give 5–10 20 50 Hurry"—and said "I want everything you have." Miss Odette complied, stuffing coins and currency in the bag. Apparently she did not hurry enough, for Argo, fired the gun, the bullet lodging in the counter, and again told her to hurry up. She then stuffed in some more money, and Argo took the bag and left. He got $2599.

At Argo's trial, the robbery was described, and Argo was identified, by teller Odette and by three other eye witnesses. The gun, seven loaded cartridges taken from it, an empty cartridge that had been fired in it, and the bullet were identified and received in evidence. Also identified and received were the blank check used in the robbery, certain records of the bank establishing the amount of the loss, a rent receipt, and a box in which the gun had been when it was sold to Argo.

Argo was convicted of violating 18 U.S.C. § 2113(a) and (d) and sentenced to 25 years. On this appeal, he makes a number of contentions:

1. The search of certain premises in Las Vegas, Nevada, where the gun and loaded cartridge were found, was improper, and those exhibits should have been suppressed.

2. The rent receipt should not have been received in evidence, because not properly connected to Argo.

3. The search of other premises in Phoenix, Arizona, where the empty cartridge and box were found, was improper, and those exhibits should have been suppressed.

4. Argo did not have the effective assistance of counsel.

We consider these contentions seriatim.

1. Argo was arrested in the living room of an apartment that he had rented under the name of A. M. Baker in Las Vegas, Nevada. The validity of the arrest is not questioned. It was made pursuant to an arrest warrant, and eleven FBI agents participated. One of them, Agent Schmidt, was immediately assigned to search the adjoining bedroom and proceeded to do so. Argo was removed from the apartment. Schmidt found the gun, loaded with seven unfired cartridges, in a small box in a nightstand in the bedroom. There was no search warrant. The court interrupted the trial to hear a motion to suppress (see Rule 41 (e), F.R.Crim.P.), and denied the motion.

 It is well established that a search, without a warrant, is not invalid if incidental to a lawful arrest. Here, the only products of the search that were received in evidence were the weapon and cartridges used by Argo in the robbery. The gun was identified by the man who sold it to Argo, and by other witnesses who saw it in his hand at the bank. It was found in the adjoining bedroom to that in which he was arrested, in an apartment that he had rented. This is in the immediate vicinity, and the search was proper. Harris v. United States, 1947, 331 U.S. 145, 152–154, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 1950, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653; Ker v. State of California, 1963, 374 U.S. 23, 41–43, 83 S.Ct. 1623, 10 L.Ed.2d 726.

 2. One Wilson produced a rent receipt showing that on February 9, 1965, he rented premises at 1413½ E. Fillmore Street, Phoenix, to "Albert M. Baker," from February 9 to March 9, 1965. He failed to identify anyone in the courtroom as "Baker," and the court did not then admit the receipt in evidence. One Stein, a bartender, testified that he sold the pistol to one "Al," and in the courtroom he identified Argo as

"Al." One Shurtleff testified that, on March 3, 1965, he rented the apartment in Las Vegas, Nevada, to a man and woman. The man was Argo, but he gave the name of "A. M. Baker." It was only after these witnesses testified that the court admitted the receipt in evidence. The connection was sufficiently established; there was no error.

■ 3. No motion to suppress was made either before or at trial as to the cartridge and box found in the Phoenix apartment. We could decline to consider the question on that ground. Sandez v. United States, 9 Cir., 1956, 239 F.2d 239, 242; Gilbert v. United States, 9 Cir., 1962, 307 F.2d 322, 325. However, we consider it because the decision not to make the motion was presumably counsel's decision, and it is claimed that counsel's representation was inadequate.

■ The search was made with the permission of the landlord, Wilson, on March 11, 1965, two days after March 9, the period of rental specified in the receipt. Reliance is placed on Ariz.R.S. 33–361, subsec. A, which states that a landlord may re-enter when rent is in arrears for five days or when the tenant violates any provision of the lease. Here, there is no evidence that the tenancy was not to terminate on March 9, in which case the section would not apply, see Ariz. R.S. § 33–341, subsec. D. Moreover, there is evidence that Argo had abandoned the premises. He had gone to Las Vegas and rented another apartment, and that fact was known to the agents when they went to the Phoenix apartment. In addition, the cartridge was found in the kitchen garbage can; this indicates that it too was abandoned. The place where the box was found is not stated. The search, so far as the record shows, was proper. Abel v. United States, 1960, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668; see also Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898. Counsel's failure to move to suppress is not an indication of incompetence.

■ 4. Argo had assigned counsel. At the opening of the trial, and before any jurors had been called from the body of the courtroom to the jury box, Argo said that he had asked counsel to subpoena certain witnesses and counsel did not do so. After a short colloquy between Argo and the court, counsel said:

> "At this time I would like to withdraw if Mr. Argo doesn't want me to represent him and wants to represent himself, if it is agreeable to the Court."

The court then suggested that the matter be considered in chambers, and this was done. Counsel stated that he had tried to reach the witnesses by mail, without success. One of the witnesses, a federal prisoner, had been subpoenaed by the government and was then available; government counsel volunteered to bring another in the next day, which he later did. The third, said by Argo to be a federal prisoner, could not be found, although government counsel tried to locate him. Argo then said:

> "I am satisfied with Mr. Gibson, it isn't that I don't think he can ably defend me, it is that I wanted those subpoenas issued."

Argo then said that he had asked counsel to move to suppress the pistol and some money. We quote the resulting colloquy in the margin.[1] Also emphasized

---

1. "The Court: Mr. Gibson, is there basis for filing such a motion?

"Mr. Gibson: It is very questionable in my mind. My thinking is if they are not admissible to accomplish the same thing at the time of trial on submission of evidence. He says he wanted a motion to suppress the evidence, consisting of the pistol.

"The Court: Counsel is representing you, sir. If you have counsel he must handle the case.

"Mr. Argo: I realize that, sir.

"The Court: Are you desiring to have Mr. Gibson go ahead with your representation?

"Mr. Argo: If he will represent me sufficiently, yes, sir.

"Mr. Gibson: Your Honor, as I stated, I would appreciate the Court permitting me to withdraw, and if your Honor sees fit, to let him go ahead and handle his case. I can sit in and give any assistance, but under the circum-

is Argo's claim that he asked counsel to go to Las Vegas to interview the witnesses. There was then no way in which the expense could be paid. Counsel then said:

"It is true he requested that and I told him I did not feel that motion—I wouldn't go out of town even if my expenses were paid, regardless of who paid them."

The transcript shows that two of the three witnesses were produced by the government for interview by counsel. They were not called. The third was not found. There is no suggestion now made that any of them would have helped Argo at all. We do not commend counsel's statement last quoted, although we note that it referred to a proposed trip to interview witnesses whose whereabouts was then unknown. But we cannot find incompetent representation from any of the foregoing.

It is also, claimed that counsel demonstrated incompetence by cross-examining an F.B.I. ballistic expert. His testimony was that the empty cartridge found in the Phoenix apartment had been fired in the gun, but that the bullet extracted from the teller's counter was so distorted that he could not say whether or not it had been fired from the gun. It is because of the latter testimony that it is now asserted that counsel should not have cross-examined. The assertion overlooks the testimony about the cartridge.

The claim that Argo did not have competent representation is belied by the record, and is without merit. See Peek v. United States, 9 Cir., 1963, 321 F.2d 934, 944; Enriquez v. United States, 9 Cir., 1964, 338 F.2d 165, 167; Reid v. United States, 9 Cir., 1964, 334 F.2d 915, 919; Audett v. United States, 9 Cir., 1959, 265 F.2d 837, 839.

Affirmed.

stances I don't feel like representing someone who doesn't want me to represent them.

"The Court: What about this motion to suppress.

"Mr. Gibson: In my mind there is very little merit to it. I was thinking if it was not admissible we could gain the same purpose at the time of the trial.

"Mr. Argo: Your Honor, the gun was seized in an illegal search and seizure. I think I should have a motion filed.

"The Court: That is your view; Mr. Gibson, as your counsel, he doesn't have sufficient question in it to file the motion. I don't know the facts and circumstances, but we can't have two lawyers in the case.

"Mr. Argo: I'm not trying to be a lawyer.

"The Court. You are. You are telling him to file a motion, to do this, and he is saying right now, 'I question its advisability and I think we can better accomplish what he wants on the trial.'"

As we have already mentioned, the motion to suppress was made and heard during the trial.