James William **NASH**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19242.

United States Court of Appeals
Eighth Circuit.

Jan. 20, 1969.

Charles M. Shaw, Clayton, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

The defendant James William Nash was convicted, in a jury trial, of possessing stolen post office money orders of a value in excess of $100 in violation of 18 U.S.C. § 641. He was jointly indicted and tried with one Robert Wilmont, who was acquitted by the jury. Nash received a sentence of four years.

On appeal Nash contends: (1) illegal arrest and search, (2) illegal search even if arrest was valid, (3) error in the admission of evidence, (4) failure of the court to declare a mistrial, and (5) error in the court's comment on the evidence. We affirm the judgment of conviction.

The record discloses that on the evening of October 24, 1967, at approximately 6:45 p. m. John Bush and William Cowell, Deputy Sheriffs, were riding in their patrol car in St. Charles County, Missouri. They received a radio message from their County Dispatcher, previously relayed from the State Patrol Dispatcher, to the effect that a till had been tapped at a service station in Wright City, Missouri. (Till tapping is theft of money from a cash register.) The offenders were described as being two white males driving east on Interstate 70 in a 1965 or 1966 brown Chrysler with Missouri license number CB 2213. Officers Bush and Cowell proceeded to the vicinity of Interstate 70 and parked on the entrance ramp for eastbound traffic. Shortly after their arrival a Chrysler matching the description of the car mentioned in the broadcast passed them traveling in an easterly direction. They pursued the car for about two miles and confirmed that the license plate thereon was the same as the one mentioned in the broadcast. Having confirmed the license plate number, the officers stopped the vehicle. Defendant Nash got out of his automobile and upon request displayed his driver's license and stated that his passenger was a hitchhiker whom he had picked up in Warrenton, Missouri. Nash and Wilmont were then placed under arrest as "suspect fugitive from Warren County." As the arrest was being made, another police officer from O'Fallon, Missouri, arrived at the scene. This officer, together with Officer Cowell, covered Nash and Wilmont while Officer Bush searched the automobile, allegedly for weapons. The arrest and search took place after dark, about two miles from the nearest town. The arrest and search were without warrant.

Officer Bush first searched the glove compartment of the Chrysler, where he discovered two loaded hand guns. He next searched the back seat area and found a .20 gauge shotgun in a case and two boxes of shells on the floor. On the back seat he found a red overnight bag which he also searched, allegedly for weapons, and found instead, among other items, 19 post office money orders which he removed from the bag and subsequently turned over to the postal authorities. He then searched the trunk of the car in which he found various tools, including pry bars, chisels or punches, screwdrivers and a lockpicking set. A valid Missouri license plate was also found in the trunk. After completing the search the suspects and the Chrysler car were removed to the St. Charles County jail.

Officer Bush contacted Post Office Inspector Thorn who took possession of the money orders. The serial numbers on these money orders were within the range of numbers of the orders stolen from the Marthasville, Missouri Post Office on the evening of March 24–25, 1967. Furthermore, they had been validated with a Marthasville Post Office dating stamp, which also had been stolen. While at the police station, Nash was fingerprinted. A fingerprint expert found one of Nash's prints on one of the money orders.

Nash testified that at the time of his arrest he was heading for St. Louis to meet a person interested in the purchase of his farm. He denied ever having seen the overnight bag or the postal money orders until they were shown to him at the police station. He also said he did not know whether Wilmont, the hitchhiker, had the bag at the time Wilmont was picked up by Nash. Nash also claimed that at the police station with no officers

# 1050

present, except Postal Inspector Thorn, Thorn handed one of the money orders to him to look at, thus causing him to leave a fingerprint on the money order. Inspector Thorn expressly denied this and testified that at no time had this occurred.

■ The defendant's first contention is that his arrest was illegal and the subsequent search without warrant was also illegal and thus evidence derived from the search must be suppressed under the exclusionary rule enunciated in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). For the first time on appeal defendant asserts there was no probable cause to suspect him of having committed a felony. Defendant did file a motion to suppress in the trial court but on a different ground which we shall discuss infra.[1] That motion was overruled without comment. The record is silent on whether the information available to the peace officers disclosed the amount of money involved in the till tapping; and under Missouri law, V.A.M.S. § 560.161, a theft of less than $50 under certain circumstances is a misdemeanor. Furthermore, Nash and Wilmont were arrested not for till tapping but for "suspect fugitive from Warren County" (for till tapping) and later for carrying concealed weapons. Under Missouri law, arrest without warrant for a misdemeanor is not permissible unless committed in the presence of the arresting officer. State v. Parker, 378 S.W.2d 274 (Mo. App.1964); City of Independence v. Stewart, 397 S.W.2d 765 (Mo.App.1965).

■ Sufficient for disposition of the first point is that the officers upon hearing the radio broadcast about the till tapping offense had reasonable cause to believe that a crime in the nature of a felony had been committed and that the persons apprehended were the perpetrators. Ordinarily, police radio broadcasts for apprehension of persons recently committing an offense and giving information on the offense, as in the present case, are concerned with felonious activity and not with misdemeanors. As pertinently observed by Judge Collet in reviewing the Missouri law on arrest in Mueller v. Powell, 203 F.2d 797, 800 (8 Cir. 1953):

"* * * [I]t is readily apparent that under the law of Missouri an officer charged with the duty of enforcing the law * * * is justified in making an arrest without a warrant, although no felony has actually been committed, but is suspected, and there is reasonable or probable grounds to suspect that the person arrested committed the crime."

■ This proceeding again indicates the soundness of the doctrine of an appellate court refusing to consider alleged errors that were not presented below. Otherwise, a person can fail to raise issues that could readily be disposed of in the trial court and thus foreclose the government from presenting evidence in the trial court or when these issues are for the first time raised on appeal. In this case the record is silent as to the amount involved in the till tapping but we do not think the point is dispositive.[2]

1. The motion alleged lack of probable cause for the arrest, but neither in the motion nor in the hearing on the motion was the charge made nor was proof offered that the police officers had no probable cause to suspect Nash of having committed a felony. From the hearing on the motion to suppress, it appears that Nash's claim was that even if the arrest were valid, the subsequent search was unnecessary, and being without warrant, was therefore illegal.

2. We were informed at the hearing that evidence was readily available to show that a felony was committed in respect to

the amount involved in the theft. While this point would not be dispositive if the arresting officers had reasonable cause to believe that a felony had been committed, as we suggested above, it does demonstrate that if the point were dispositive, the necessity, in the efficient administration of justice, of requiring a defendant to raise the issue in the trial court where both parties are then apprised of the issue and can produce such evidence as might be available. Evidently the parties at the hearing to suppress recognized, assumed or knew a felony had been committed and the government did not furnish information on issues not raised.

The Seventh Circuit in refusing to consider errors not raised below in United States v. Jones, 204 F.2d 745 (1953) said at 749:

"We shall not, in a flagrant case, give cognizance to a complaint first made to us and thus give the defendant two bites at the same cherry, by declaring erroneous action of the trial court, the fault of which defendant did not see fit to make the court aware, when he had the opportunity to do so."

This Circuit in Shaw v. United States, 403 F.2d 528 (8 Cir., 1968) held in line with previous holdings of this Circuit and other circuits that:

" * * * [B]arring plain error, we will not notice errors raised for the first time in the appellate court, including errors involving a defendant's constitutional right. Robinson v. United States, 327 F.2d 618 (8 Cir. 1964). Cf. Clay v. United States, 394 F.2d 281 (8 Cir. 1968); and see United States v. Indiviglio, 352 F.2d 276, 280 (2 Cir. 1965); United States v. Del Llano, 354 F.2d 844, 847–848 (2 Cir. 1965); United States v. Bolden, 355 F.2d 453, 458–459 (7 Cir. 1965); Good v. United States, 378 F.2d 934, 936 (9 Cir. 1967); United States v. Armetta, 378 F.2d 658, 661 (2 Cir. 1967)."

There is no plain error in this case. To invoke Rule 52(b), Fed.R.Crim.P., most courts require the miscarriage of justice to be clear and the error flagrant. In Gendron v. United States, 295 F.2d 897 (8 Cir. 1961) we said:

"The application of rule 52(b) rests within the sound judicial discretion of the appellate court. The normal rule is that an appellate court should not consider questions which have not been properly raised in the trial court and upon which the trial court has had no opportunity to pass. The plain error rule should be applied with caution and should be invoked only to avoid a clear miscarriage of justice. To exercise the right freely would undermine and impair the administration of justice and detract from the advantages derived from orderly rules of procedure." (Citations omitted.)

■ Defendant's next contention is that even if the arrest were legal the subsequent search was not. In reliance upon Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) and Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), the defendant maintains that there was no compelling reason for the police officers not to secure a search warrant and that absent such compelling reasons a search incident to an arrest without warrant is unreasonable. Neither *Carroll* nor *Henry* dealt with the question of what searches incident to a valid arrest are permissible but *Carroll* considered only the broad issue of probable cause for a search and *Henry* whether the arrest without warrant was based on probable cause. *Trupiano* did say, "A search or seizure without a warrant as an incident to a lawful arrest has always been considered to be a strictly limited right.", and "The mere fact that there is a valid arrest does not *ipso facto* legalize a search or seizure without a warrant.", at 708 of 334 U.S., at 1234 of 68 S.Ct. However, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) has limited the full thrust of *Trupiano* by stating at p. 66, at p. 435 of 70 S.Ct. "To the extent that Trupiano v. United States, 334 U.S. 669, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled." *Rabinowitz* also said, "What is a reasonable search is not to be determined by any fixed formula * * *. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case." Id. 63, 434 of 70 S.Ct.; and essentially any search incident to a valid arrest is also valid if it is reasonable. Since *Rabino-*

*witz* virtually every circuit [3] has held that where there is a valid arrest, a search for stolen property or loot or for weapons in the immediate vicinity to protect the officer is reasonable. In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the Supreme Court said at 367, at 883 of 84 S.Ct.:

> "Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons * * *. This right to search and seize * * * extends to things under the accused's immediate control * * *. The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape."

█ In this case the officers were making an arrest after dark on a highway two miles from the nearest town. A search for weapons for the purpose of self-protection constituted prudent police action and was a reasonable search incident to the arrest. Of course, other evidence found in a valid search for weapons, including stolen money orders as in the present case, needn't be ignored. Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Thus the trial court did not err in refusing to suppress the material evidence discovered in the search.

█ Nash next contends that regardless of the validity of the arrest and search, the court erred in allowing testimony by Officer Bush that guns and other tools were found in the car during the search. Defendant claims that such testimony is inadmissible, being evidence of other crimes designed solely to discredit his character. The Government responds that such testimony is admissible as being part of the circumstances and description of the arrest.

The objected to evidence was admissible for the purpose of showing design, intent, motive or lack of innocent purpose. Williams v. United States, 272 F. 2d 40 (8 Cir. 1959). It was also admissible for the purpose of making an accurate presentation to the jury of the facts concerning the arrest and the search. In United States v. Volkell, 251 F.2d 333 (2 Cir. 1958), the court admitted testimony about a gun being found during a search for narcotics, observing at 336: "An honest and accurate statement of articles found on the premises at the time of the arrest was necessary to present a true word picture of the scene as observed by the persons present." The use of evidence which tends to show the commission of other crimes but is relevant for other purposes, either as an inherent part of the description of relevant events, or to show design, purpose or intent, is proper according to 1 Wigmore, Evidence § 217–218 (3rd ed. 1940). In the present case it is clear that the testimony regarding the items found in the car was an inherent part of the description of the arrest of Nash and Wilmont, and was properly admitted on that basis. It might also be said that such testimony rebutted the claim of defendant that he was merely en route for the purpose of seeing a prospective purchaser of his farm. The court did not err in admitting this testimony. Similarly, Nash's contention that testimony of the police officers that they were on the lookout for a brown Chrysler should not have been admitted since it implied that defendant was suspected of, and arrested for, another crime is without merit for the reasons stated above.

█ Nash next contends that testimony by the police officers that they

3. See, Grillo v. United States, 336 F.2d 211 (1st Cir. 1964); United States v. Gorman, 355 F.2d 151 (2d Cir. 1965); Hayden v. Warden, 363 F.2d 647 (4 Cir. 1966), rev'd on other grounds 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Rodriguez v. Hanchey, 359 F.2d 724 (5 Cir. 1966); United States v. Yant,

373 F.2d 543 (6 Cir. 1967); United States v. Owens, 346 F.2d 329 (7 Cir. 1965); Lee v. United States, 363 F.2d 469 (8 Cir. 1966); Argo v. United States, 378 F.2d 301 (9 Cir. 1967); Taylor v. United States, 334 F.2d 386 (10 Cir. 1964); Brown v. United States, 125 U.S. App.D.C. 43, 365 F.2d 976 (1966).

were told by their dispatcher to be on the lookout for a brown Chrysler with a certain license number is inadmissible since it is based on hearsay. This contention is baseless since the testimony was not used to prove that a brown Chrysler with that license plate number was the car actually involved in the till tapping, but rather the testimony was used merely to indicate what the police were in fact told and as an explanation of why defendant's car was stopped.

Nash complains next of the admission by the trial court of rebuttal evidence regarding the discovery of tools, including a lockpicking device found in the trunk of his car. On direct examination, Nash testified that the purpose of his trip that day was to meet in St. Louis with a prospective purchaser of his farm. On cross-examination the Government attempted to establish that Nash knew of the presence of the tools, easily used for burglary, attempting by this evidence to show that Nash's intentions that day were not entirely innocent. Nash denied such knowledge. On redirect he again denied such knowledge. The Government then placed Officer Bush back on the stand in rebuttal, to testify again to the discovery of the tools. As was said in a similar situation in Brooke v. United States, 128 U.S.App.D.C. 19, 385 F.2d 279 (1967) at 286, "The admission and scope of rebuttal evidence are matters entrusted to the sound discretion of the trial judge." The admission of this rebuttal evidence was clearly not an abuse of the trial judge's discretion.

Defendant contends Judge Regan's remark that a certain tool found in defendant's car was a device "used by a lockmaker.", was reversible error. This contention lacks substance. The Judge's remark added nothing that was not already known to the jury. If anything, Judge Regan's delineation of the tool as one "used by a lockmaker" was less devastating to defendant's case than the description presented to the jury in testimony by Officer Bush that the tool was a "lock picking device." The trial judge has a right to make fair comment on the evi-

dence. See, Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).

On cross-examination of Officer Bush, defense counsel asked whether either defendant had been asked "if the bag belonged to him?". Officer Bush replied, "No." On redirect examination Government counsel asked whether either defendant denied ownership of the overnight bag which contained the post office money orders, to which Officer Bush responded, "No." Defense counsel immediately moved for a mistrial on the ground that defendant was under arrest and had no obligation to speak, thus no comment could be made as to his silence. The motion for a mistrial was denied.

■ The Government acknowledges that the question should not have been asked. It was invited and prompted by defense counsel asking the officer whether he had asked either defendant "if the bag belonged to him?". The court instructed the jury to disregard the question and answer.

■ As was said in Maestas v. United States, 341 F.2d 493, 496 (10 Cir. 1965):

" * * * [I]t is the general rule that error in the admission of evidence under most circumstances may be cured by withdrawing the evidence from the jury's consideration and instructing the jury to disregard it. Holt v. United States, 94 F.2d 90 (10th Cir.). However, as an exception to the general rule, where the character of the testimony is such that it will create so strong an impression on the minds of the jurors that they will be unable to disregard it in their consideration of the case, although admonished to do so, a mistrial should be ordered."

Compare Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Since the officer did not ask the question of who owned the bag and neither defendant acknowledged ownership and the trial court immediately instructed the jury to disregard the question and an-

swer, the defendant has not been prejudiced.

It would also appear that the point is now moot, as the defendant took the stand in his own behalf.[4]  The question could have been rephrased and directed to the defendant on cross-examination.  By volunteering to become a witness the accused also volunteered to answer all relevant inquiries about the charge against him.  As more aptly phrased in 8 Wigmore, Evidence § 2276 (2) (McNaughton Rev.1961), "His voluntary offer of testimony upon any fact is a waiver as to *all other relevant facts* because of the necessary connection between all."  See Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 97 L.Ed. 704 (1943).

Defendant's last contention that the court's admission of testimony by Officer Bush that defendant had been placed under arrest for carrying a concealed weapon is reversible error, is not well taken as this testimony relates to the circumstances of the arrest.  In addition, the jury was instructed to disregard it.

Judgment affirmed.

---

4.  There is no contention that the only reason defendant took the stand was because that particular question had been asked.