**UNITED STATES of America,
Plaintiff,**

v.

**John Henry BROWN, Sinclair Hughes,
Jr., and Robert Lavon Nooks,
Defendants.**

**Crim. No. 488.**

United States District Court
S. D. Georgia,
Swainboro Division.

Oct. 24, 1969.

R. Jackson B. Smith, U. S. Atty., Augusta, Ga., for plaintiff.

James E. Yates, III, Thomas F. Walsh, Savannah, Ga., for defendants.

LAWRENCE, Chief Judge.

## ORDER

These three defendants were indicted by the grand jury for the offense of bank robbery [Title 18 U.S.C. § 2113(a) and (d)]. They have presented for this Court's consideration a number of pre-trial motions; namely, (1) a motion to suppress certain physical evidence; (2) a motion to suppress certain verbal statements; (3) a motion to suppress identification evidence and (4) a motion to quash the indictment. The motions were heard on October 3, 1969 when the testimony of thirteen witnesses including that of the three defendants was offered by movants. The hearing consumed nearly four and a half hours.

On November 25, 1968, at approximately 12:30 P.M. the Bank of Stapleton in Jefferson County, Georgia was entered by three Negro males, one of whom was armed with a pistol. After threatening to shoot anyone who disobeyed his command the armed robber forced everyone in the Bank into the vault. The robbers then took cash in excess of $10,000 and fled the scene of the crime in a white 1969 Chevelle with a cardboard dealer's tag attached to the rear. Mr. Kilgore, the head cashier and vice president, immediately called the Georgia State Patrol and reported the robbery. He furnished a description of the three men and the car in which they made their getaway. Acting on the report, Trooper Hopkins of the State Patrol dispatched a radio bulletin to all State and local law enforcement officers in which he described the automobile and its occupants. Receiving the report, Sheriff A. R. Dye of Warren County, set up a road block on the Warren-Glascock Road at a point approximately twenty-five miles from Stapleton. At around 1:45 P.M. the fourth automobile seen by Sheriff Dye, a 1964 Buick, passed the check-point. The driver, a Negro, threw up his hand in greeting as he passed the patrol car, and then looked back over his left shoulder. The car, which sagged low in the rear, was weaving and passed to the left of the center line. Sheriff Dye became suspicious and pulled the automobile over for a routine investigation and license check. The driver got out of the car and while producing his license, began to talk in a nervous, rapid-fire manner saying that he knew the Sheriff and mentioning his father. While talking, he would advance a step toward Dye who would take a step back. Dye became apprehensive. He observed that the automobile was muddy and had grass on it. He heard a rustling noise coming from the trunk. The Sheriff asked if he could look in the trunk but the driver replied that he did not have the key.

At this point Dye placed the driver under arrest, instructing him to proceed in his automobile to Warrenton where the trunk could be opened by a locksmith. The Sheriff followed in his car and while in transit contacted Agent Herndon of the Georgia Bureau of Investigation by radio. Dye's detailed description of the arrested suspect was confirmed by Herndon as fitting that of the gun-wielding robber. Herndon drove to the Warrenton Road and intercepted the procession. With Herndon's car in front and Dye's in the rear the three vehicles proceeded in the direction of Warrenton. As the vehicles were passing a major highway intersection, with Herndon's car already across, the middle vehicle took a sharp left turn and as the driver did so he pointed a pistol out of the window and fired several shots at Dye's vehicle. Sheriff Dye turned to follow the Buick. Herndon also turned around and followed Dye in giving chase. Herndon

radioed ahead and a road block was set up several miles from the intersection. Shots were fired by the pursuer and the pursued. The automobiles were traveling at speeds of around 115 m. p. h. When the vehicles approached the road block an officer shot out the tires on the Buick. It rolled off the road into a ditch. Sheriff Dye ran over to the vehicle and as the driver emerged he clubbed him. State Trooper Lane and Dye testified that they thought Brown had an object, possibly the gun, in his hand.

The automobile was then searched. A pistol was found under the front seat. The trunk lid was pried open and two Negroes matching the description of the other two bank robbers were found as well as a box containing all of the stolen money and items of clothing worn during the hold-up. The three defendants were placed in a patrol car and returned to Stapleton by Sheriff Compton of Jefferson County. After stopping at the Bank to return the money he proceeded with them to Louisville, county seat of Jefferson County. The defendants were jailed. When Compton stopped in Stapleton the defendants remained in the automobile. They were not taken into the Bank and were not displayed for identification purposes.

At the Louisville jail, Special Agents Applegate and Whaley of the Federal Bureau of Investigation questioned the man who was driving the 1964 Buick. Brown's head was cut as a result of the blow delivered by Sheriff Dye. There was still some bleeding. He was given a form that contained the *Miranda* warnings. He read the form, said that he understood it and, although he did not sign a waiver of rights form, agreed to submit to questioning without having an attorney present. He made several oral admissions. In addition, he informed the Agents where the 1969 Chevelle had been left. At 4:10 P.M. Brown was taken to the Jefferson County Hospital where the cut was closed with twelve stitches. He then took the FBI Agents to the Chevelle.

The following day, Agents Applegate and Whaley returned to the jail to question the co-defendants, Hughes and Nooks. Both were given the *Miranda* warnings and informed of their constitutional rights. They signed waivers before making oral admissions to the Agents. On November 27th the three men were taken before a United States Commissioner.

## MOTION TO SUPPRESS CERTAIN PHYSICAL EVIDENCE

Defendants have moved to suppress as evidence all physical items removed from the 1964 Buick in which they were apprehended on the grounds that the arrest by Sheriff Dye was made without a warrant and without probable cause and that any such evidence seized incident to the arrest was illegally obtained.

A search and seizure incident to a lawful arrest is valid although made without a warrant and evidence thus obtained is admissible at trial. Argo v. United States, 9 Cir., 378 F.2d 301, cert. denied, 390 U.S. 907, 88 S.Ct. 823, 19 L.Ed.2d 874; Morales v. United States, 9 Cir., 344 F.2d 846; Hollins v. United States, 9 Cir., 338 F.2d 227, cert. dismissed, 385 U.S. 802, 87 S.Ct. 9, 17 L.Ed.2d 48; Newcomb v. United States, 9 Cir., 327 F.2d 649, cert. denied, 377 U.S. 944, 84 S.Ct. 1350, 12 L.Ed.2d 307. Search of an automobile incident to a lawful arrest is likewise proper (Harris v. Stephens, 8 Cir., 361 F.2d 888, cert. denied, 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113; Kuhl v. United States, 9 Cir., 322 F.2d 582) and an arrest without a warrant is lawful where the arresting officer has probable cause to believe that a felony has been or is being committed. Tindle v. United States, 117 U.S.App.D.C. 27, 325 F.2d 223; Ralph v. Pepersack, 4 Cir., 335 F.2d 128; Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620; Taglavore v. United States, 9 Cir., 291 F.2d 262. What constitutes probable cause is evidence that would warrant a man of reasonable caution to believe that a felony has been committed. Such evidence must be measured by the

facts of the particular case in which legality is questioned. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

■ Here there were ample grounds for the arrest. Sheriff Dye knew that a bank had just been robbed within twenty-five miles from the place of the roadblock. He was aware that the Warren-Glascock road was a probable escape route in the event the robbers attempted to leave Jefferson County. He was cognizant of the fact that the robbers were Negro males. He knew that they might switch cars during their getaway. He made a routine stop of a vehicle under circumstances of the driver's suspicious actions.[1] While he was checking his license he noted that the automobile was covered with mud and grass, that the Negro driver was extremely nervous. He heard rustling noises coming from the trunk of the vehicle whose rear end was, as stated, sagging low. Any reasonable man might have concluded under these circumstances that this particular individual was involved in the robbery. The initial arrest was legal. The eventual search and the seizure of physical evidence after the attempted escape was likewise legal.

■ Counsel for defendants attach great significance to the fact that Sheriff Dye testified on the stand that when he made the arrest he was suspicious but did not know exactly what he was looking for and that he originally thought the car might be transporting illegal whiskey. The arresting officer's retrospective verbal characterization of his impressions at the time of the warrantless arrest is not controlling. The test is whether or not in the light of the knowledge and factual circumstances appearing to the arresting officer a reasonable man might have concluded that a felony had been committed by the person apprehended.

## MOTION TO SUPPRESS VERBAL STATEMENTS

■ Defendants have moved to suppress all incriminating oral statements made by them after the arrests on the grounds that (1) the statements were given when defendants feared bodily harm from law enforcement officers and from a hostile crowd of persons who had gathered at the Bank; (2) there was no attorney present and defendants had not waived their right to representation; and (3) defendants' statements were taken before they were carried before a United States Commissioner.

As to defendants Hughes and Nooks, there is no substance whatever to any of these contentions. The only statements by these defendants were given to Agents Applegate and Whaley of the Federal Bureau of Investigation on November 26th, a full day after the robbery. There is no evidence to support the claim that they were in fear of bodily harm. They testified that on the previous day some unidentified person on their return to the bank said that because they were bank robbers they should be shot. They also testified that they had seen the cut on Brown's head which had been treated the previous day. There was no evidence that a hostile mob had assembled at the Bank where they stopped momentarily on their way to jail. Nor does the evidence show that they had been beaten or even threatened by state or federal agents. It is hard to believe that having merely seen a cut on Brown's head could have created enough fear to force these men into confessing to Federal Agents almost a day later at the county jail.

The claim that Nooks and Hughes were not informed of their constitutional rights is unfounded. Prior to the giving of the statements in question they were informed by Agent Applegate of their constitutional rights and each read and signed a waiver form indicating that

1. As to the right of officers to make routine stops of automobiles and interrogate occupants see Wilson v. Porter, 9 Cir., 361 F.2d 412; Nicholson v. United States, 5 Cir., 355 F.2d 80. "[A] reasonable warrantless search of a moving vehicle may be properly made in the absence of a prior arrest." Williams v. United States, 5 Cir., 404 F.2d 493, at 494.

they understood and voluntarily waived these rights. Their statements were voluntarily given.

■ Counsel argue that defendants were not taken before a magistrate within a reasonable time in derogation of Rule 5(a), Federal Rules of Criminal Procedure. This has no bearing on the admissibility of their statements which were elicited by Federal officers while the defendants were in State custody. Unless a "working arrangement" between state and federal officers (i. e., a collaborative effort to elicit a confession during detention) is shown or unless the defendants were arrested by State officers for a crime which is entirely Federal, Rule 5(a) is not applicable. Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829; Moore's Federal Practice, Vol. 8A § 5.02 [4]. There was no evidence that any such collaboration existed and armed bank robbery is clearly a state as well as a Federal crime. Rule 5(a) does not apply here.

■ Defendant Brown's statement was also made to Agents Applegate and Whaley but on the day of the robbery and prior to receiving medical treatment. The testimony in this regard reveals that Brown was injured at approximately 2:00 P.M. and that he was treated at around 4:30 P.M. of that same day. Shortly before he was treated he was interrogated by Agents of the Federal Bureau of Investigation. After being fully informed of his constitutional rights and orally waiving the presence of counsel and his right to remain silent, he made certain statements including information as to the location of the Chevelle. Brown contends that these statements were involuntarily given because he was in physical pain and because he was told that no medical treatment would be administered unless he confessed. The testimony shows that Brown's cut required twelve stitches to close and that there was bleeding from the cut during the period of the FBI interrogation. He claims that as he read the form given to him by the agents blood was falling on it. Brown does not appear to be a person whose will would be overborne by such an injury. However, it is impossible to say what effect the wound had upon him. To render an admission or confession inadmissible on the ground of being obtained by force it is necessary that the confessor's will be overborne. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948. The trend seems to be to vitiate confessions or admissions where the influence of threats or of violence has a slight or supposititious relationship. Bell v. Alabama, 5 Cir., 367 F.2d 243; Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634; United States ex rel. Romano v. Fay, 2 Cir., 360 F.2d 389; Romano v. Follette, 385 U.S. 1020, 87 S.Ct. 725, 17 L.Ed.2d 557. In my opinion, Brown's statement was not induced by fear of harm or because of the injury he had earlier received. However, there is a possibility that it is tainted by the injury and we will be on safer ground if any such statement (or the fruits thereof) prior to receiving medical treatment at the Jefferson County Hospital is ruled out. The District Attorney will take note.

## MOTION TO SUPPRESS THE IDENTIFICATION EVIDENCE

Defendants argue that when they stopped at the Stapleton Bank enroute to the jail at Louisville they were placed on display to officers and employees of the Bank for purposes of identification and that any testimony of such persons identifying them as having been there at the time of the robbery should be excluded. This contention is refuted by the testimony. Sheriff Compton of Jefferson County says that they stopped at the Bank only for the purpose of returning the stolen money. There was no testimony that defendants were removed from the car and taken into the Bank or that any eyewitness was brought out to the automobile to observe the defendants. Nooks and Hughes both testified that

some unidentified woman was looking out of the bank window and possibly saw them sitting in the car. The testimony also shows that Mr. Kilgore, the Bank's president came out to receive the money and that he saw the car and its occupants but did not go over to the car or look into the vehicle.[2]

## MOTION TO QUASH INDICTMENT

■■ Defendants move to quash the indictment on the grounds that they were not given a preliminary hearing before a United States Commissioner as required by Rule 5(c), Federal Rules Criminal Procedure and that the indictment was based on evidence before the grand jury which was illegally seized. There was no evidence before this Court as to whether a preliminary hearing was conducted. An accused person is not constitutionally entitled to a preliminary hearing (Sciortino v. Zampano, 2 Cir., 385 F.2d 132) and where an indictment is returned prior to such hearing the necessity thereof is obviated. Rivera v. Government of Virgin Islands, 3 Cir., 375 F.2d 988. The purpose of the preliminary hearing is to determine whether or not there is probable cause to hold an accused person for grand jury presentment and an indictment moots that question. Bayless v. United States, 9 Cir., 381 F.2d 67. The claim that the grand jury based the true bill on incompetent evidence was not pressed at the hearing. An indictment returned by a legally constituted grand jury, valid on its face, warrants a trial on the merits and is not illegal because of incompetent evidence. United States v. Aviles, 2 Cir., 274 F.2d 179, cert. denied, Evola v. United States, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009.

All of defendants' motions are denied with the exception of any oral statement (or fruits thereof) made by John Henry Brown to the FBI Agents on the afternoon of November 25, 1968 prior to receiving medical treatment at the Jefferson County Hospital.

---

2. Compare Agius v. United States, 5 Cir., 413 F.2d 915 (1969).