**STATE of Missouri, Respondent,**

v.

**Donald Seaf JOHNSON, Appellant.**

**No. 57226.**

Supreme Court of Missouri, Division No. 2.

June 11, 1973.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Shaw & Howlett, Keith W. Hazelwood, Clayton, for defendant-appellant.

HOUSER, Commissioner.

Donald Seaf Johnson appeals from a judgment of conviction and 6-year sentence on a charge of Stealing Over $50. We have jurisdiction, the notice of appeal having been filed prior to January 1, 1972. Mo.Const. Art. V, §§ 3, 31, V.A.M.S.

None of the points raised by appellant justifies or requires reversal of the judgment.

### I. The Information.

The information, which charges a crime under the general stealing statute, § 560.-156, RSMo 1969,[1] V.A.M.S., is challenged on these grounds: that this prosecution (for stealing timber) was improperly filed under § 560.156—that if the facts adduced at trial constitute any crime they demonstrate a violation of § 560.405 [2] or § 560.-480,[3] RSMo 1969, V.A.M.S.; that the information is internally inconsistent in that it charges both stealing and cutting timber, but that the manner in which the prosecution was conducted at trial demonstrates that appellant was prosecuted for *cutting* timber; that the State cannot "constitu-

---

1. § 560.156: "It shall be unlawful for any person to intentionally steal the property of another, * * * without his consent * * *." "Steal" is defined in par. 1. (2) to mean "to appropriate ' by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property."

2. § 560.405: "Every person * * * who shall, without the consent of the owner, cut down, destroy or carry away any timber or tree or trees whatsoever being on land not his own, * * * shall be deemed guilty of a misdemeanor."

3. § 560.480: "Any person who shall go upon any lands belonging to * * * [another], and shall unlawfully cut down or destroy, * * * any tree or trees two inches in diameter or more standing or growing thereon, * * * shall be deemed guilty of a felony * * *."

tionally convict where the charge is under a general statute, such as Section 560.156, when the evidence proves [a case under] a specific statute such as Section 560.405 or Section 560.480"; and that the information is duplicitous in that it charges two separate offenses: (1) stealing, taking and carrying away goods and (2) cutting down and carrying away 10 white oak trees.

The charging portion of the information alleges that Donald Seaf Johnson did "with specific criminal intent, wilfully, intentionally, unlawfully, maliciously, deliberately, feloniously, on purpose, and of malice aforethought steal, take and carry away the goods, wares, chattels and personal property of IMC Drilling Mud, Inc., to-wit: did cut down and carry away 10 white oak trees of a value of approximately $200.00 located on Section 7 approximately one mile west of Blackwell, Missouri, with the felonious intent then and there to steal and to permanently deprive the owner of the use thereof and convert the same to his own use and without the consent of the IMC Drilling Mud, Inc."

■■■ The information is not duplicitous or internally inconsistent. It charges one offense: stealing. The gravamen of the offense charged is larceny of timber. The wording following "to-wit" is not the statement of a separate offense under § 560.405 or § 560.480, but constitutes allegations of caption and asportation, a description of the property stolen, and a charge of intent to convert the property and permanently deprive the owner thereof. While caption, asportation, intent to take and carry away, convert and deprive inhere in the word "steal" as that word is used and defined in § 560.156, and although these elements are no longer considered necessary allegations in an information under that section, State v. Miles, 412 S.W.2d 473 (Mo.1967), their inclusion in historically conventional form does not take the information out from under that section, vitiate the charge, or make the information duplicitous.

■■■ The information was properly filed under § 560.156. At the 1955 session of the General Assembly at which § 560.-156 was enacted § 560.235 [4] and § 560.485,[5] RSMo 1949, V.A.M.S. were repealed. The action of the General Assembly in thus disallowing prosecutions for larceny of timber under specific statutes relating particularly to timber indicates a legislative intent that larceny of timber be prosecuted thereafter under the general stealing statute, § 560.-156.

The State could have proceeded under § 560.405 or § 560.480, RSMo 1969, V.A.M.S., if the prosecuting attorney had intended to charge cutting, destruction or removal of timber. It is clear, however, that this was not his intention. The State's theory, and the gravamen of the information and evidence adduced in support, was that of *stealing* timber—not merely unlawfully cutting and carrying timber away. The stealing charge could not have been presented by charging under § 560.405 or § 560.480, RSMo 1969, V.A.M.S., because neither of these sections proscribes stealing timber. This is not the case of charging under a general statute when the evidence proves a case under a particular statute. Nor is this a case of charging one offense and proving another. This is the situation in which, in the absence of any specific statute on the books relating to the particular crime of timber stealing, that crime is charged under a general statute and the evidence sustains the charge.

4. § 560.235 (repealed): "Every person * * * who shall steal, take and carry away any timber, * * * standing, being or growing on the land of another, * * * shall be deemed guilty of larceny * * *."

5. § 560.485 (repealed): "Any person who shall take and carry away any trees, * * * [or timber from another's land suitable for manufacture into lumber] with intent to convert the same to his own use * * * shall be deemed guilty of a felony * * *."

The information notified appellant of the nature of the charge laid against him, in clear language and with more particularity and specificity than is presently required. State v. Miles, supra. It may not fairly be said that appellant has been prejudiced by any defect in the information, or by filing the charge under § 560.156.

## II. Sufficiency of State's Evidence.

■ There was sufficient probative evidence from which, together with attending circumstances, the jury could find that appellant committed the crime charged, and to find criminal intent to steal, convert and deprive the owner of the property in question. There was direct evidence that appellant cut down 10 white oak trees ranging in diameter from 18 to 24 inches on land belonging to IMC Drilling Mud, Inc.; that he caused the logs to be loaded onto a truck, and that he sold the logs to a stave company, receiving therefor a check in the sum of $99.54, which he cashed. At trial appellant made this significant admission against interest, confirming the fact that the cutting occurred on the lands of IMC Drilling Mud: "Q. Now, the nearest Dresser Material land to this land where you cut the timber is over a quarter-mile away, isn't it? A. Yes, sir, it's about a quarter-mile, I understand now." While there was no direct evidence of criminal intent, there was ample circumstantial evidence of this element of the crime. IMC Drilling Mud, Inc. leased 455 acres of land to the Richards brothers. It was fenced. The trees in question were cut inside a fenced 16-acre tract lying within the 455-acre tract. The IMC Drilling land adjoins timber lands owned by Dresser. The nearest place on Dresser land where timber had been cut was a half mile from where the trees in question were felled. Buck Richards, one of the lessees, was notified on a Sunday that chain saws were running on the leased land. He went to the place, where he found appellant winching a log, dragging it up a hill to load it onto his truck; another man cutting a tree, and several more men sitting around drinking beer. Nine or ten trees had been cut. Richards asked appellant who gave him permission to cut the timber. Appellant first told Buck that he was cutting it for Bob Warden. Buck's brother, Burnham, informed of these facts, notified and summoned Bob Warden. The two went to the place where the timber had been cut. In the meantime the timber had been loaded onto appellant's truck and the truck had left the scene. Following the truck tracks Burnham and Warden caught up with appellant, whose truck had mired down in the mud. Appellant had exited from the property by a different route from that by which he entered, and had cut a wire fence in the process of leaving. He left via a creek and spring branch. Burnham asked appellant who gave him authority to cut the timber. Appellant answered that he was cutting timber on Dresser land. Informed that it was not Dresser land but land of IMC Drilling, appellant offered to pay for the timber. Burnham asked appellant about the latter having told Buck that Bob Warden had given him permission to cut on there, Warden having told appellant that he had never given appellant permission to cut any timber for him. Appellant did not reply and did not, in the presence of Warden, claim that the latter had authorized the cutting. Instead appellant claimed that he thought he could cut anywhere on Dresser, and that all he had to do was turn the money over to Warden. Informed that Burnham would have to report the timber cutting appellant told Burnham to take the money or "get the hell out of here"; that they had no business there; that appellant had "had enough of" them, and said, "You boys better get away from here and leave me alone." Neither IMC, the Richards brothers, or Bob Warden had given appellant permission to cut timber on IMC Drilling land. Appellant conceded that he had not been authorized to cut the trees by Bob Warden and sought to justify the cutting on the ground that appellant's brother Joe "was

supposed to have the permission" to cut the timber on Dresser property; that appellant thought this was Dresser land; that while he was thoroughly familiar with the location of boundary lines of properties in this area where he had been raised he was not familiar with the boundary line between Dresser property and that of IMC Drilling. He "understood" that the timber he cut belonged to Dresser. He conceded that he made no attempt to determine ownership of the land. Bob Warden testified that he had not given appellant or his brother Joe permission to cut any timber on any lands. Appellant and his brothers were raised within a mile of where the timber was cut. "[E]verybody knew that there was forty acres of real good white oak" on this land.

From the foregoing the jury could infer that due to his knowledge of boundary lines in the area and the existence of a boundary line fence (through which he had to pass to get onto IMC Drilling land) appellant knew that the trees he cut were growing on land belonging to IMC Drilling and that neither he nor his brother had permission to cut the trees; that appellant cut the trees in a remote area on Sunday, a day when discovery would be least likely; that when caught red-handed he misrepresented that Warden had authorized the cutting; that when discovered he quit cutting and immediately left the scene by a different route, hastily cutting a wire fence in order to make his exit; that when overtaken and confronted with Warden's denial appellant changed his story and offered to pay for the logs and when told he would be reported appellant lost his temper and made threatening statements. At trial appellant offered a different justification (i. e., permission given appellant's brother Joe by Bob Warden) which, in turn, was repudiated by Warden. The jury was entitled to draw the conclusion that appellant did not cut the timber and sell the logs in good faith under color of a rightful claim, but that he knowingly cut the timber on the property of another without authority or vestige of right to do so, and that he

carried away and converted the logs to his own use with criminal intent to wrongfully deprive the rightful owner thereof permanently.

III. Admission of Evidence.

On redirect examination of State's witness Burnham Richards by the prosecuting attorney this exchange occurred:

"Q. Now, what did you, or, did the Defendant tell you after you advised him that you were going to turn this over to Mr. Carr [agent for IMC Drilling Mud], or that you were going to—

"A. He told us to get the hell out of there, that he'd had enough of us right now. And, knowin' Johnson's reputation I took him at his word—

"MR. HAZELWOOD: Objection. I move that that be stricken and a mistrial declared.

"THE COURT: No. The answer may be stricken, but the request for a mistrial will be denied."

■■ Appellant argues that he had not put his character or reputation in issue and that the foregoing improperly did so, thereby prejudicing him and requiring declaration of a mistrial. It is true that reputation testimony is admissible only when the defendant has put his reputation in issue. State v. Willard, 346 Mo. 773, 142 S. W.2d 1046 [5] (1940). The volunteered remark did not necessarily convey the impression that appellant had a bad reputation or a reputation for violence (compare State v. Knicker, 424 S.W.2d 605 [6] (Mo.1968)), although it was susceptible to such an inference and therefore was subject to exclusion. The prejudicial effect of the volunteered remark was for the trial court to determine, it being in a better position than the appellate court to appraise its effect upon the jury. In recognition of the impropriety of the remark the trial court sustained the motion to strike but declined to declare a mistrial. The power to

declare a mistrial should be exercised sparingly and only in extraordinary circumstances—only when the incident is so grievous that its prejudicial effect can be removed in no other way. State v. Cage, 452 S.W.2d 125 [4]. The trial court evidently did not consider the matter sufficiently serious to take the drastic step of aborting the trial, and we find no abuse of discretion in the ruling.

On direct examination State's witness Burnham Richards testified that he and his brother leased 455 acres of land from IMC Drilling Mud, Inc.; that part of this land was in "Section 7 of St. Francois County," and that the timber cutting he observed took place there. No objection was made to this testimony. On redirect examination the following occurred:

"Q. Mr. Richards, * * * that land you've got leased in Section 7 is in Section 7, Township 38 North Range 3 East, is that correct?

"A. I'm sure that's right. I can check it on the map down here.

"MR. HAZELWOOD: Judge, I'm going to object to this; this man doesn't know unless he's surveyed the property. He knows what is written in the lease—

"THE COURT: No. Overruled, overruled.

"MR. MURPHY: Well, it is contained in the lease, that description?

"A. It sure is.

"Q. Section 7, Township 38 North and Range 4 East, is that correct?

"A. That's right.

"THE COURT: What county and what state?

"MR. MURPHY: In the County of St. Francois?

"A. St. Francois County, State of Missouri."

On the basis of this exchange appellant argues that the State failed to prove that the lumber was cut on lands of IMC Drilling Mud, Inc.; that the only way to establish this necessary fact would be by making a survey and having a surveyor testify; and that the witness would not know that the property where the trees were cut is located in Section 7, Township 38 unless he had surveyed the property. In this testimony Burnham Richards was merely stating that the land leased was described in the lease as a certain Section 7. Surely it cannot be denied that a lessee of property under a written lease may testify as to the section, township and range of the property leased as that appears in the document. Likewise, a lessee of fenced lands who is shown to be familiar with the leased premises and who has taken part in the erection of an enclosure within the outside boundaries, may testify as to physical conditions within the enclosure. One of the lessees testified without objection that the trees were cut within that enclosure. While the testimony of a surveyor and a survey is a proper and sufficient way in which to prove the fact, State v. Lundry, 361 Mo. 156, 233 S.W.2d 734 (1950), it is not the exclusive method. Here we have testimony of the County Recorder of Deeds and county records showing that the property in question was deeded to IMC Drilling Mud, Inc. and that deed was recorded; the testimony of the County Collector that this property was assessed to the grantee and that the grantee paid the taxes on the property; the unobjected-to testimony of the lessee of the property that the leased property is surrounded by a fence "all the way around the outside" and that the timber was cut from this described land, and what is perhaps the most conclusive item of evidence on this point, namely, appellant's admission against interest, supra, which bears directly on the question and confirms the fact that the cutting occurred on the lands of IMC Drilling Mud. Considering the foregoing evidence introduced by the State in conjunction with ap-

pellant's admission we rule that there was sufficient substantial evidence to make a submissible case on the question of the ownership of the property where the trees were cut.

### IV. State's Closing Argument.

In his closing argument the prosecuting attorney said: "Now, the Defendant's brother Joe Johnson is a witness who came in here and testified, he's a convicted felon, he's charged with the same charge he [evidently referring to appellant] is here today." Objection was made on the ground that there was no evidence that Joe Johnson had been charged with any crime. The prosecuting attorney stated that he admitted it while on the stand, and the judge commented, "Go ahead with the argument." Later the prosecutor made this unobjected-to statement: "Now, when you weigh the probability or improbability of the Defendant's statement, and his brother who participated in this crime, it's just highly improbable."

■ There is no question that the State had the right to refer to the fact that Joe Johnson was a convicted felon, he having admitted that he had been convicted of burglary and larceny in 1959.

Counsel for appellant makes an unsupported charge that in fact Joe Johnson was not charged with this same timber stealing and therefore the State's argument to the jury was prejudicially erroneous; that it misled the jury and made appellant's explanations and those of his brother Joe appear contrived for their mutual self-protection; that the court should have instructed the jury to disregard the erroneous and misleading statement of the prosecuting attorney.

In addition to the fact that appellant made no request of the court to so instruct the jury, the record does not support counsel's statement that Joe Johnson was not in fact charged with this crime. Counsel's statement does not prove itself and there is no evidence of record to indicate that the prosecutor's comment was not made in good faith. To the contrary, answers given by Joe Johnson himself tacitly admitted that he had been so charged. On cross-examination the prosecuting attorney asked Joe Johnson whether he remembered talking to the prosecuting attorney in his office about this case "some months ago right *after you were charged with this*?" to which Johnson answered, "Yes, sir, I do." Thereafter, when Johnson denied making certain statements the prosecuting attorney queried, "You didn't tell me that in my office in there *after these charges were filed against you*? A. No, sir, I didn't. I told you * * *." (Our italics.)

■ "A prosecutor has the right to comment on the evidence and the credibility of the [defendant's] witnesses from the state's viewpoint." State v. Woods, 346 Mo. 538, 142 S.W.2d 87, 90 [10] (1940). Where the evidence justifies it the credibility of one charged as a coparticipant in a crime, when offered as a witness for the accused, may properly be the subject of comment in the State's closing argument to the jury. In the process the prosecuting attorney may belittle and point to the improbability and untruthfulness of alleged coparticipant's testimony on the basis that it is to the witness' self-interest to establish accused's innocence. The record before us warranted the prosecuting attorney in making the argument.

No error appearing the judgment of conviction is affirmed.

STOCKARD, C., concurs.

### PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.