**STATE of Missouri, Respondent,**

**v.**

**Robert TOMIZOLI, Appellant.**

**No. KCD 27052.**

Missouri Court of Appeals,
Kansas City District.

Feb. 3, 1975.

Motion for Rehearing and/or Transfer
Denied March 4, 1975.

William E. Mounts, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Defendant appeals his conviction of robbery in the first degree. He was found guilty by a jury which assessed his punishment at twenty five years in prison; this was reduced by the trial court to fifteen years.

The events leading to defendant's conviction had their genesis in a robbery occurring at the U-Totem Store on East Ninth Street, Kansas City, Missouri, on December 22, 1972. At that time, Lillian Schwenk was the lone clerk in such store. With no other customers in the store, a man entered at about 12:45 P.M. and proceeded to the beer cooler. He then went to the check out counter carrying a six-pack of beer. Mrs. Schwenk was standing behind the counter and after ringing up the beer sale, raised her eyes to ask the man if he desired to purchase anything else and found herself looking into the barrel of a small hand gun.

At this time the store was well lighted and the man was standing immediately across the counter from Mrs. Schwenk with no covering over his face. She described the gun as a small shiny pistol with a white handle.

While pointing the gun at Mrs. Schwenk, the man told her he wanted money and she gave him about $33.00 from the cash register, part of it being in coins. He stated he also wanted cigarettes, and seeing a watch displayed which he liked, ordered her to give it to him. Mrs. Schwenk gave him a carton of cigarettes with a Lucerne watch in a watch case. While Mrs. Schwenk was getting the watch, the man reached over the counter and took a Ronson cigarette lighter, also in a box. The man then told Mrs. Schwenk to stand by the register, and when he reached the door, told her, "I do not want to shoot you, but I will". The man got into a dirty station wagon, which had been parked with the back toward the store and immediately in front of the front door. Mrs. Schwenk was able to see the license plate on this automobile and as the man got in she wrote the number on a piece of paper on the counter.

Mrs. Schwenk stated the man was in the store from five to six minutes during which he was standing just across the width of a counter from her, and the store was very brightly lit. Shortly after the man left the store, the first police officers arrived at the store and Mrs. Schwenk gave them the license number she had written down, together with a description of the man who had committed the robbery. She described him as being real skinny, medium height, and rather weatherbeaten. She also stated he was wearing dark trousers and a green jacket and he had put the small items he had obtained in the jacket pocket.

About 2:00 P.M. on the same day, two officers of the Kansas City Missouri Police Department saw a station wagon parked at Ninth and Hardesty in Kansas City, Missouri, bearing the license number which Mrs. Schwenk had given. These officers "staked out" the car and after waiting only about five minutes, observed two men and one woman emerge from a house and enter the station wagon. The officers called for another car to assist and began

following the station wagon, and as soon as the other police car arrived, the station wagon was stopped. The defendant was riding in the front passenger seat and was told to get out of the car along with the other occupants. The officers advised the defendant he was under arrest for robbery and proceeded to search him. A shiny gun with a white handle, later found to be a blank pistol, was found in the defendant's right front coat pocket. The defendant was also wearing a Lucerne watch, and a watch case for such watch was found under the driver's side of the vehicle, together with an unopened carton of cigarettes. The lady in the car handed one of the officers a Ronson cigarette lighter and took one of the officers to her home where she handed him some coins which the defendant had given to her children when he had come to her home about noon on that day. This lady testified in behalf of the defendant and stated the defendant had been at her home early on that morning and had left and returned about noon at which time he gave her the cigarette lighter for a Christmas present. She noticed at the time he was wearing a new watch, later found to be a Lucerne.

The defendant was taken to the police station and after being given the Miranda warning, both orally and by signing a statement to that effect, gave to the police a full statement admitting his perpetration of the robbery. After giving the statement, the police arranged for Mrs. Schwenk to attend a line-up at police headquarters at about 5:00 P.M. on the same day, in which the defendant appeared with three other men. Mrs. Schwenk was given a card with numbers on it and she was asked to simply circle the number of the person she identified as the robber. She circled the number corresponding to the defendant.

At trial, Mrs. Schwenk identified the defendant as he was sitting at the counsel table and stated she had absolutely no doubt he was the man who had committed the

robbery. She also testified to the line-up and of her identification of the defendant there.

■ Defendant's first point on this appeal is the action of the trial court in overruling his motion to suppress the pre-trial identification made by Mrs. Schwenk because it was made under circumstances so suggestive as to deprive the defendant of his constitutional guarantees.

The defendant relies on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Defendant's principal contention that the line-up was made under suggestive circumstances rests on his assertion that defendant was the only man in the line-up with a weatherbeaten face. Defendant points to no action on the part of any of the police officers suggesting to Mrs. Schwenk that she identify the defendant at the line-up, nor does he point to any other evidence indicating any leads, hints or actions by the police, or anyone else, which tainted her identification.

This court had recent occasion to speak on the subject of a line-up and the law concerning its proper conduct in State v. Ealey, 515 S.W.2d 778 (Mo.App.1974). There the applicable United States Supreme Court decisions were discussed. This court there noted the absence of any evidence showing any improper suggestions, leads, hints or actions by the police which tainted the identification. The test of the totality of the circumstances was discussed and it was concluded that the identification procedures utilized were fair and this, coupled with the all important independent basis for the in-court identification, showed the identification to have been properly made. The only real contention the defendant makes here is the absence of other men in the line-up with weatherbeaten faces. In Gaitan v. State, 464 S.W.2d 33 (Mo.1971) our Supreme Court stated: "[p]ersons in a line-up cannot be identical, and to say that one was

darker or taller than another does not establish unfairness". It is obviously impossible for the police department to arrange a line-up consisting of persons who all have exactly the same physical characteristics or who may be wearing the same color and style of clothing as described by the victim of a crime. Under the holding in *Gaitan,* the fact there was no one else in the line-up with the defendant who possessed a face matching his "weatherbeaten" characteristics does not render the line-up impermissibly suggestive.

A photograph of the line-up, containing the defendant, is before this court and it can be said with all confidence that such line-up was not impermissibly suggestive due to the appearance of those participating. In fact, defendant's face does not appear to be noticeably more weatherbeaten or lined than at least one other person therein.

■ What is perhaps more important is the strong independent basis for Mrs. Schwenk's in-court identification. She had ample time and light in which to observe the defendant in close proximity. As stated in *Ealey,* "where there is an untainted, positive in-court identification made upon a factual basis independent from such photograph or line up procedures, such in-court identification is proper". See also State v. Britt, 504 S.W.2d 38 (Mo.1973) and State v. Jackson, 477 S.W.2d 47 (Mo.1972).

Because of the foregoing, it was not error to refuse to suppress the pre-trial identification of the defendant made by Mrs. Schwenk.

■ Defendant next complains of the court's refusal to suppress the confession he made because of the claimed coerced conditions under which it was given. Defendant filed a motion to suppress this confession and a pre-trial hearing was held. At this hearing, defendant testified Mr. and Mrs. Fitzgerald, who were in the car with him at the time he was arrested, were also taken to the police station. He

stated the Fitzgeralds had a number of small children at home, which he stated was well known to the police, and stated the police told him the Fitzgeralds would be held until he made a statement concerning the robbery. Mrs. Fitzgerald testified she was sitting on a bench in the hall at police headquarters outside the room in which the defendant was being questioned, and she overheard the statements related by defendant being made. The State called three police officers, who denied that any statements concerning the Fitzgeralds being held had been made to the defendant. They also stated the defendant had been given the Miranda warning orally at the time he was arrested and also he had signed a waiver of his rights prior to making a written confession of the robbery.

Defendant contends the threats made concerning the holding of the Fitzgeralds amounted to conditions which were coercive upon the defendant and his confession was the result of such coercion and was, therefore, not voluntary.

Defendant also made the rather inconsistent statement that he was so intoxicated at the police station he did not know what he was doing. The defendant also made some claim he did not have his glasses and could not read the waiver prior to signing it. Both of these assertions were denied by the police officers.

After hearing the evidence the trial court overruled defendant's motion to suppress the confession. The trial court found the conflicting issue against the defendant. As stated in State v. Anderson, 384 S.W.2d 591, 604 (Mo. banc 1964):

> "To the extent that there was conflicting evidence upon the issue presented, it is evident that the trial court found the State's evidence more credible and found the facts in accordance therewith. We have said that, in determining the issue of voluntariness, 'unless manifest error has been committed appellate courts will defer to the trial court's ruling in view of its better opportunity to arrive at the truth'. State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88, 94. We defer to the trial court on the matter of credibility."

The trial court found the contested issues against the defendant. He does not point to any basis for finding a manifest error on the part of the trial court and a review of the evidence discloses none. Defendant's assertion of error on this point is overruled.

■ Defendant in his final point complains of the refusal of the trial court to declare a mistrial on two occasions during the testimony of Officer Ferguson.

The first relates to an answer Officer Ferguson gave in which he described the articles found on the defendant and in the car, in which he concluded they were "*taken in the robbery*". The next occurrence came sometime later when Officer Ferguson was recalled in which he stated he "was cruising the area at Ninth and Hardesty when he observed a station wagon that was *used in the robbery*".

On the first occasion, defendant's counsel objected to the conclusion that certain things were taken anywhere and the court sustained this objection. Counsel next requested the court to admonish the jury to disregard the comment and moved for a mistrial. The court admonished the jury to disregard the last statement of the witness and denied the motion for a mistrial. On the second occasion, counsel simply objected to the remark of the officer and requested the response be stricken and the jury admonished, and the court sustained the objection and told the jury to disregard the last remark. Thereafter counsel moved for a mistrial which the court overruled.

In situations such as this, it is clear the trial court is vested with a broad discretion as to whether or not a mistrial should be declared. Appellate courts will not interfere with the exercise of this discretion un-

less it is determined as a matter of law the trial court abused its discretion in refusing a mistrial. State v. Parker, 476 S.W.2d 513 (Mo.1972).

Defendant relies on Nash v. United States, 405 F.2d 1047 (8th Cir. 1969) and Odom v. United States, 377 F.2d 853 (5th Cir. 1967). *Nash* states the above rule concerning the discretion of the trial court. *Odom* involved a remark by an officer that he had seen the defendant come in and out of jail and spoke with him for approximately a year and a half. This obviously was a statement advising the jury the defendant had been convicted of other crimes and was held to be so prejudicial a new trial was required.

A case closer to the facts here is State v. Craig, 433 S.W.2d 811 (Mo.1968) in which a police officer referred to the defendant as a "hold-up man". The court there held the action of the trial court in sustaining an objection, though denying a mistrial, was proper. The court discussed other cases in which similar statements were made and the action of the trial court in refusing a mistrial was upheld.

In this case there was no doubt a robbery had been committed and the license number on the station wagon which Officer Ferguson observed was the same number as given by Mrs. Schwenk, which would naturally lead him to believe this was the station wagon used in the robbery. The description of the gun and the other items taken from the defendant or the station wagon at the time of his arrest fit the description of the items taken in the robbery. The trial court had before it the live performers and could instantly judge the effect of these remarks. This court is unable to say as a matter of law the trial court abused its discretion in refusing a mistrial. This point is ruled against the defendant.

Finding no prejudicial error, the judgment is affirmed.

All concur.