STATE of Missouri, Plaintiff-Respondent.

v.

James William HOYEL, etc., Defendant-Appellant.

No. 36269.

Missouri Court of Appeals, St. Louis District, Division Three.

Dec. 30, 1975.

Motion for Rehearing or Transfer Denied March 10, 1976.

Bell, Wilson, Harris & Kirksey, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Mark A. Brown, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

The thrust of defendant's appeal from a conviction of assault with intent to kill without malice aforethought is that the trial court committed prejudicial error in permitting the introduction of certain rebuttal evidence at trial and refusing to grant a mistrial after an alleged hearsay statement

was made by a witness. We find no prejudicial error and affirm the judgment of conviction.

Considering the evidence in the light most favorable to the jury verdict, it appears that on a Sunday afternoon Isaah Barnes, Jr. ("Little Isaah")[1] and his cousin, Floyd Hargrove, made a purchase of food at a barbecue stand in St. Louis. Some conversation ensued between Mr. Barnes, Floyd Hargrove, defendant and two or three of defendant's companions. The substance of the conversations and whether they were bellicose is not clear from the record. According to Mr. Barnes and Floyd Hargrove, after the purchase of food had been made, they drove away from the barbecue stand followed by defendant and two or three of his companions in his automobile. When Mr. Barnes stopped at a traffic signal about two blocks from the barbecue stand, defendant's car stopped behind him, sounding its horn. Mr. Barnes and his cousin left their automobile to investigate whatever was causing the problem with defendant and his passengers. As Mr. Barnes and Mr. Hargrove approached defendant, who was still in his automobile, defendant shot Mr. Barnes in the side and exited from the scene with celerity. Mr. Barnes and Floyd Hargrove positively identified defendant as the person who had shot Little Isaah. Defendant's defense was that he had been with his ex-fiancé, Rosie Hicks, at the time of the incident. Defendant's nephew testified that he (the nephew) was present at the time of the shooting; that it was defendant's brother Lewis Hoyel—not defendant—who had shot Mr. Barnes; that defendant was not present at the shooting. Lewis Hoyel, defendant's brother, was deceased at the time of trial.[2]

Defendant did not testify, but his alibi defense was presented by others to the effect that he was elsewhere at the time of the crime and with his ex-fiancé, Rosie Hicks. The defense first called Father Paul Schulte, pastor of St. Bridget of Erin Parish, who testified that on the date of the crime he had seen Rosie Hicks at church accompanied by a man. Father Schulte could not identify defendant as being the person with Ms. Hicks. Rosie Hicks then testified that she had been at Father Schulte's church with defendant at the time Mr. Barnes was shot. In response to questioning on cross-examination, Ms. Hicks testified that she could not remember ever having been told by defendant that he was confined in Barnes Hospital in St. Louis on the date of the assault on Mr. Barnes. As its rebuttal, the State called Father Schulte who testified that defendant had told him and Rosie Hicks that "there wouldn't be too much problem with the case because the day when this happened that there was records he [defendant] was in the hospital." As further rebuttal, the State presented evidence from Barnes Hospital personnel that the hospital records had been altered to indicate that defendant was a patient in the hospital on the date Mr. Barnes was shot. A Barnes Hospital Security guard testified that over a year after the crime, he encountered the defendant in the hospital carrying his own hospital medical records which defendant refused to give up and with which he left the hospital.

Defendant alleges that the trial court erred in allowing the State to introduce as rebuttal evidence that the defendant had stolen and forged hospital records. The hospital records and testimony from hospital personnel concerning the forgery were admitted in rebuttal to establish that defendant attempted to create an alibi that he was in the hospital on the date of the shooting, although defendant did not, in fact, present such an alibi at trial. How-

---

1. As Mr. Barnes was referred to by defendant's counsel. The cognomen "Little Isaah" is an inappropriate appellation; Little Isaah is 6′5″ tall and weighs 278 pounds as contrasted with defendant who is 5′6″ and weighs 145 pounds.

2. Lewis Hoyel had been killed in a gun battle with police the day after Little Isaah had been shot.

ever, Rosie Hicks, in asserting defendant's alibi that he was not present at the place of the crime but was, instead, with her, testified on cross-examination that she did not recall defendant's stating that he was in the hospital on the date of the offense. But apparently—according to Father Schulte—defendant had asserted to both Father Schulte and Ms. Hicks that he had been hospitalized during the period of the attack on Mr. Barnes. The testimony on rebuttal of Father Schulte was to counter Rosie Hicks' denial of the allegation by defendant that he was in the hospital at the time of the incident involving Mr. Barnes. The State then presented evidence of the hospital records alterations which would have put defendant in the hospital at the time of the crime.

■ We conclude that the evidence concerning the altering of the hospital records was properly allowed in the State's rebuttal. Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by a defendant may be used in rebuttal of the defendant's testimony or evidence. *State v. Williams,* 442 S.W.2d 61 (Mo. banc 1968), overruled on other grounds, *State v. Ayers,* 470 S.W.2d 534 (Mo. banc 1971); *State v. Kirk,* 510 S.W.2d 196 (Mo.App.1974). The hospital records evidence does tend to disprove the alibi testimony of Rosie Hicks when her testimony is viewed in conjunction with the testimony of Father Schulte. Rosie Hicks testified during the defendant's case that she was with defendant on the day of the crime and that she could not recall anything of his contentions that he was in the hospital at that time. Father Schulte's testimony directly countered Ms. Hicks' testimony. And the hospital records evidence supported Father Schulte's testimony by showing an attempt to establish an alibi in direct conflict with that of Rosie Hicks. The State's inquiry to cast doubt upon the credibility of defendant's alibi as presented by Rosie Hicks was within legitimate bounds. *State v. Kirksey,* 528 S.W.2d 536 (Mo.App.1975);

*State v. Davis,* 527 S.W.2d 32 (Mo.App. 1975).

The situation in this case is not unlike that in *State v. Harvey,* 449 S.W.2d 649 (Mo.1970). In *Harvey,* the defendant's alibi was that he was out of the State at the time of the crime for which he was on trial. Although in his direct examination, the defendant made no mention of filing for a job application out of state, on cross-examination, defendant testified that he had made application for employment with the Nebraska State Employment Service. On rebuttal, the State was permitted to bring in records that no such application had been made. The rebuttal was held to be a proper attack on the credibility of defendant's alibi. So, too, do we believe that the rebuttal here was legitimate.

■ But there is another, perhaps stronger, reason why this evidence was properly admitted. Evidence to show that an accused has attempted to fabricate false evidence or destroy evidence is always admissible as showing consciousness of guilt. *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975); *State v. Smith,* 355 Mo. 59, 194 S.W.2d 905 (1946); *State v. Mathews,* 202 Mo. 143, 100 S.W. 420 (1907). Such evidence is admissible as evidence of one's guilt of the principal facts charged. *State v. Christian,* 245 S.W.2d 895 (Mo.1952).

■ Further, the scope of rebuttal is within the sound discretion of the trial court and unless the court abuses its discretion or the defendant's rights are prejudicially affected, the appellate court will not reverse even though the rebuttal testimony may not be proper rebuttal testimony. *State v. Gamache,* 519 S.W.2d 34 (Mo.App. 1975); *State v. Bendickson,* 498 S.W.2d 593 (Mo.App.1973). The fact that the challenged evidence could have or perhaps even should have been presented in the State's case in chief does not require its preclusion in rebuttal. *State v. Adams,* 465 S.W.2d 536 (Mo.1971); *State v. Feltrop,* 343 S.W.2d 36 (Mo.1961); *State v. Huffer,* 424 S.W.2d 776 (Mo.App.1968). It is within the trial

court's broad discretion to allow evidence in chief to be introduced in rebuttal. *State v. Huff*, 454 S.W.2d 920 (Mo.1970); *State v. Whipkey*, 361 Mo. 1008, 238 S.W.2d 374 (1951). See § 546.070(3), RSMo.1969. We find that the trial court did not abuse its discretion in allowing the hospital record evidence to be used as rebuttal under the circumstances of this case.

■ Defendant also alludes to the fact that alteration of hospital records is a crime and that, generally, evidence of a crime other than that charged is inadmissible. We have already determined that the evidence concerning the hospital records was properly received for the reasons set forth, so we need not delve into defendant's argument on this point. It is sufficient to point out that there was an apparent attempt to fabricate or destroy evidence by the alteration of hospital records in order to establish an alibi, albeit the alibi was not directly presented by the defendant. Defendant's actions with the hospital records were intertwined with his efforts to establish his innocence, and evidence relating thereto was properly admitted. *State v. Smith*, 194 S.W.2d 905 (Mo.1946). In *State v. Smith*, supra, the defendant specifically argued that evidence showing an attempt to fabricate evidence was inadmissible as it was of another crime. However, the court held that such evidence was admissible under the general principle that an attempt to procure false evidence is "always admissible as showing consciousness of guilt," 194 S.W.2d at 907. The fact is that the acts of defendant are sufficiently related to the crime charged so that they may be shown as evidence of his guilt. *State v. Lunsford*, 338 S.W.2d 868 (Mo.1960).

Defendant also alleges that the trial court erred in failing to grant a mistrial on the basis of a hearsay statement made by a State witness. In his direct examination Floyd Hargrove was asked the first time he learned of defendant's name. Mr. Hargrove answered, "when she [defendant's niece] said that he [defendant] did the shooting." The trial court sustained defendant's objection to the answer, ordered the answer stricken and ordered the jury to disregard it. But defendant argues that his motion for mistrial should have been granted as the statement was prejudicial hearsay.[3] We affirm the trial court's decision not to declare a mistrial.

■ It is within the trial court's province to determine the prejudicial effect of a volunteered improper remark by a witness, *State v. Johnson*, 496 S.W.2d 852 (Mo.1973); *State v. Brown*, 463 S.W.2d 821 (Mo.1971), as the trial court is in the best position to judge the effect of the remarks. *State v. Camper*, 391 S.W.2d 926 (Mo.1965); *State v. Tomizoli*, 519 S.W.2d 713 (Mo.App.1975). The granting of a mistrial is a drastic remedy which should be used only in extraordinary circumstances when the incident is so grievous that its prejudicial effect can be removed in no other way. *State v. Jackson*, 506 S.W.2d 424 (Mo.1974);[4] *State v. Johnson*, supra; *State v. Pickens*, 527 S.W.2d 29 (Mo.App.1975); *State v. Blockton*, 526 S.W.2d 915 (Mo.App.1975). And the role of an appellate court is to determine whether the trial court abused its discretion in refusing to grant a mistrial. *State v. Jackson*, supra; *State v. Duncan*, 499 S.W.2d 476 (Mo.1973); *State v. Camper*, supra. We find that the trial court did not abuse its discretion here.

Cases cited by defendant are not felicitous as they involved situations where hearsay was actually admitted in evidence. Here, the alleged hearsay was stricken from

---

**3.** The State does not concede that the answer given by Mr. Hargrove was hearsay but was competent evidence by extrajudicial statement. See *State v. Maxwell*, 502 S.W.2d 382, 391 (Mo.App.1973). But in view of our ruling we need not consider whether the statement was competent.

**4.** For example, in *State v. Jackson*, supra, it was held not to be an abuse of discretion to deny a mistrial where the wife of the victim while on the witness stand spontaneously cried out, "Oh God! Why did you have to kill him? You didn't have to kill him!"

the record and the jury instructed to disregard it. The trial court's action in this instance was sufficient.

The judgment is affirmed.

SIMEONE, P. J., and McMILLIAN, J., concur.