STATE of Missouri, Respondent,

v.

Joseph GILLUM, Appellant.

No. KCD 28010.

Missouri Court of Appeals,
Kansas City District.

Aug. 2, 1976.

Motion for Rehearing and/or Transfer
Denied Aug. 30, 1976.

Thomas M. Larson, Public Defender, Sixteenth Judicial Circuit, E. L. Messina, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

PRITCHARD, Chief Judge.

By the verdict of a jury appellant was convicted of the commission of the offense of kidnapping. Upon a finding of the commission of a prior felony, as alleged, the court sentenced appellant to eight years imprisonment in the Department of Corrections under the Second Offender Act.

■ The sole point presented is whether the trial court erred in failing to suppress evidence of appellant's lineup identification, made upon the ground that lineup was conducted in such a prejudicial manner as to be in violation of appellant's right of due process of law. Developed in argument, it is appellant's position that when the victim viewed him in the lineup there were only two other individuals with him who varied considerably from him in physical appearance and age so as to present grave dangers of his misidentification. The point is without merit because the evidence shows that there was ample opportunity for the victim to view appellant during the course of the commission of the crime so as to give her in-court identification a source independent of the lineup identification.

The victim was abducted from the corner of 35th and Troost in Kansas City about 8:20 p. m., on November 25, 1974. She was forced into the back seat of a Chevrolet Malibu automobile after which the car was driven around for 20 minutes. It was then stopped in "the bottoms" for about 20 to 25 minutes at which time the victim was subjected to an attempted rape. During the pre-trial hearing of appellant's motion to suppress, the victim testified that on being driven to and from "the bottoms", she was seated in the back seat of the car from which she could see the driver from the side, and he had short hair, a mustache and

a beard or goatee. At "the bottoms" the victim, according to her testimony at trial, was put into the front seat of the car between the driver and the passenger. At that time she looked appellant directly in the face as he' looked at her while he was just inches away. She got a good look at him and had no trouble seeing his face regardless of the lighting conditions (described as being from a little light on top of a barn about a half of a city block from where the car was located). Her testimony was precisely: "Q (By Mr. Bressel) Did you get a good look at the defendant at the time that he had stopped that vehicle in the Bottoms area at that deserted location? A Yes, I did. Q He was still driving? A Yes. * * * A Right, and after I was in the front in between both of them, he looked at me for a long time, looked at my eyes. Q And did you look back at him? A Yes, I was looking at him, too. Q How far from him, in your best judgment, were you? A I was touching him. I was sitting right next to him. * * * "

The victim positively identified appellant as her abductor and assailant not only in the course of the trial but during the hearing of the pre-trial motion to suppress, and in the lineup. On cross-examination (by the state) she testified on the motion to suppress: "Q Miss ___, do you recognize this man here at the counsel table? A Yes. Q And do you recognize him from the events that took place on November 25th? A Right. Q He is one of the persons, the driver of the car in which you were abducted? A Yes." On November 26th, the day after the abduction, the victim went to the police station to view a lineup. Nothing in particular was said to her by the officers. Of the three persons she observed in the lineup she picked out appellant.

■ The variance in physical appearances of the three persons in the lineup which appellant says presented grave danger of misidentification of him were these: Appellant was described by the officer conducting the lineup as being a Negro male, 38 years old, about six feet tall and of heavy build. The No. 1 man was a Negro

male, 27 years of age, 5 feet 8 inches tall, weight 175 pounds, and who had a mustache and beard. The third individual was a Negro male, 21 years of age, 5 feet 9 inches tall, 130 pounds, and who had a mustache and goatee. The two persons in the lineup with appellant were the only ones then available to the officer. As was stated in *State v. Tomizoli,* 519 S.W.2d 713, 715[1] (Mo.App.1975), "It is obviously impossible for the police department to arrange a line-up consisting of persons who all have exactly the same physical characteristics or whom may be wearing the same color and style of clothing as described by the victim of a crime." See also *Gaitan v. State,* 464 S.W.2d 33, 35[3, 4] (Mo.1971). There is no contention here that the officer conducting the lineup made any direct suggestion to the victim that among the persons she was to view was her abductor. The mere dissimilarity in the physical appearances of the men in the lineup is insufficient to show an impermissible suggestiveness. See *Gaitan,* supra, involving a two-man lineup. Significant here upon the issue of appellant's claimed possibility of misidentification is the short time interval, one day, between the abduction and the view of appellant in the lineup, so that the victim's memory of appellant's appearance as she looked at him closely during the course of abduction was fresh. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

The evidence above related shows clearly that the victim's in-court identification of appellant had a source independent of the lineup. Sitting closely to him in the front seat of the car she had ample opportunity to view, and she did view, his features from a distance of just inches away. And even though the composition of appellant's lineup might not be the most desirable, any imperfection in it is removed by the victim's untainted in-court identification. *State v. Jordan,* 506 S.W.2d 74, 81[11–14] (Mo.App. 1974); *State v. Gay,* 523 S.W.2d 138, 142 (Mo.App.1975); *State v. Rutledge,* 524 S.W.2d 449, 456[5] (Mo.App.1975); and see also *State v. Tidwell,* 500 S.W.2d 329 (Mo. App.1973), although there are here no con-

**169**

flicts in the evidence as to the victim's opportunity to observe appellant during the course of the abduction.

The judgment is affirmed.

All concur.