**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Ivan DIZDAR, Defendant-Appellant.**

**No. 42443.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 21, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

 

Daniel Devereaux, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Thomas G. Auffenberg, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

On December 4, 1979, the defendant was convicted of the Class D felony of assault in the second degree in violation of § 565.060, RSMo 1978. Punishment was assessed at two years imprisonment.

Defendant asserts three points of error in this appeal. His first claim is that the trial court abused its discretion by allowing certain rebuttal testimony into evidence because it was improper rebuttal or alternately because it consisted of evidence of other crimes. His second point asserts that the trial court abused its discretion in failing to grant his motion for a new trial based on newly discovered evidence. Defendant's third point challenges the giving of an instruction which he alleges was vague, misleading, ambiguous and not in compliance with Rule 28.02. We affirm the judgment of the trial court.

A review of the evidence in the light favoring the conviction supports the following facts. On April 12, 1979, at approximately 4:45 a.m., Sulejman Grbic, a 28 year old butcher of Croatian descent, was walking to his car near the intersection of Spring and Itaska in the City of St. Louis with the intention of going to work. When he went to open the car door he heard a voice say to him, "Good morning." Looking up, his eyes caught the person of Stjephan Dizdar who was coming toward with a silver handgun. As Stjephan advanced he told Grbic he was going to kill him and that Kristo Moravic, a teammate, was next. At this point Grbic heard a noise behind him and turned to see the defendant Ivan Dizdar coming toward him armed with a baseball bat. The defendant advanced toward Grbic and tried to hit him on the head. Grbic raised his arm to shield his head from the blow and the weapon struck him on the

left forearm. Defendant fell down at this point and Grbic took off running, Stjephan giving chase with gun in hand yelling "Stop." Defendant jumped into his automobile. Grbic then ran to the intersection of Gustine and Itaska Streets and sought help from a passing motorist. This person let Grbic in his car and took him to a nearby police station where Grbic gave his account of the incident to police and identified the Dizdar brothers as his assailants. Grbic was then taken to a hospital where he was diagnosed as having a fractured dislocation of the left forearm. He was unable to work for five months and as of the time of trial was unable to lift as much as five pounds.

Defendant in his first point maintains that the trial court abused its discretion in allowing the admission into evidence of the State's rebuttal testimony of John Kosic and Stanley Mayer because (1) it was improper rebuttal and as such was highly prejudicial, and (2) because the substance of the testimony consisted of evidence of other crimes not before the court. In order to intelligently discuss this point, it is necessary that we recount the evidence concerning an incident which occurred three weeks prior to the assault on Grbic. Ivan, Stjephan and Grbic are members of the Croatian community in St. Louis. Sulejman Grbic plays for a team known as Hrvat. On March 28, 1979, Grbic's team was engaged in a soccer match with a team by the name of Croatia or "Croatian-American." While not players, the Dizdar brothers were avid supporters of the Croatia team. On that day an altercation erupted. The transcript is replete with differing versions of what precisely happened. Grbic testified that the Dizdars were on the field and when someone on the Hrvat (Grbic's) team hit Ivan, Stjephan began to threaten everyone. Stjephan testified that only his brother and not he came on the field, that Ivan was knocked unconscious and that Stjephan took him to the hospital. Stjephan also testified that he saw Stanley Mayer, one of the rebuttal witnesses in question, but denied ever speaking to him. On rebuttal Mayer testified that after the fight at the game he was attacked by the Dizdar brothers and that Ivan was conscious and able to do him bodily harm. John Kosic testified similarly.

■ Was this improper rebuttal? *State v. Williams*, 442 S.W.2d 61 (Mo.banc 1968) *overruled on other grounds* in *State v. Ayers*, 470 S.W.2d 534, 538 (Mo.banc 1971), states the general principle that "[a]ny competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence." *Id.* at 65[7]. The scope of this testimony is largely within the discretion of the trial court and subject only to abuse of discretion or prejudice to the defendant's rights, this court will not reverse a trial court's decision to let challenged rebuttal testimony into evidence. *Id.* [8].

■ Here the State had initially brought up the subject of the soccer fight through the testimony of Mr. Grbic presumably to suggest a motive for the instant assault by showing that the Dizdars intended to seek revenge on all members of the Hrvat team and not merely those directly involved in the melee. The defense then brought in the Dizdar brothers who testified that no such altercation occurred after the soccer game and that they had not sought revenge on anyone other than to bring those responsible to justice. The challenged testimony of Kosic and Mayer followed. Since the rebuttal testimony directly contradicted the assertions of Ivan and Stjephan that they were not assaulting other players and threatening revenge after the soccer game, it was proper rebuttal. This is so because it is competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant. *State v. Harris*, 539 S.W.2d 793, 794–795 [7] (Mo.App.1976). The rebuttal testimony of Kosic and Mayer clearly meets that requirement.

The second thrust of defendant's point I is that it was an abuse of the trial court's discretion to allow the previously discussed rebuttal testimony into evidence because it introduced evidence of similar but collateral

crimes which were not before the court, specifically assaults which were allegedly committed by the appellant after the soccer game on March 28, 1979.

The general rule is that the proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to establish directly the defendant's guilt of the charge for which he is on trial. *State v. Lue*, 598 S.W.2d 133, 137 [3] (Mo.banc 1980). The areas where this evidence is usually admitted are known as the "other crimes exceptions" and include evidence which tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan, and identity. *State v. Simmons*, 602 S.W.2d 13, 15 [1] (Mo.App.1980); *McCormick on Evidence*, 447–454 (1972). Here, the admission of the testimony of the two rebuttal witnesses as to the actions of defendant was proper, even though it consisted of evidence of a collateral crime, because it logically tended to prove a motive for attacking · Grbic.

■ Finally, defendant adds in his argument that assuming that the evidence of the prior assaults was admissible, its admission as rebuttal, rather than as part of the State's case-in-chief, resulted in unfair and prejudicial surprise to defendant. The fact that challenged evidence could have, or perhaps even should have been presented in the State's case-in-chief, does not require its preclusion in rebuttal. *State v. Hoyel*, 534 S.W.2d 266, 269 [5] (Mo.App.1975).

Defendant asserts in his second point that the "trial court abused its discretion in failing to grant his motion for a new trial because there was newly discovered evidence, so material as to produce a different result, of which the trial court was aware at the time of the hearing of said motion." This "newly discovered" evidence consists of the testimony of five additional witnesses who were surrebuttal witnesses at the trial of defendant's brother Stjephan. Presumably, if defendant had been granted a new trial he would have called these five additional witnesses to testify that the assaults allegedly committed by the Dizdar brothers had not occurred as Kosic and Mayer had testified they had.

■■ The requirements which must be met in order to obtain a new trial on the basis of newly discovered evidence are as follows: (1) the facts constituting the newly discovered evidence must have come to the knowledge of the accused after the end of the trial; (2) the fact that the evidence did not come to the movant's knowledge until after the trial must not be owing to any want of due diligence on his part; (3) the evidence is so material that it would probably produce a different result on a new trial; and (4) the evidence is not cumulative only or merely of an impeaching nature. *State v. Taylor*, 589 S.W.2d 302, 305 [5, 7] (Mo.banc 1979); *State v. Harris*, 413 S.W.2d 244, 247 [3] (Mo.1967). While it is arguable that none of these conditions have been met, it is clear that the fourth condition had not been met because the testimony of the five surrebuttal witnesses would be merely cumulative.

At trial Kosic and Mayer, the State's rebuttal witnesses, testified that defendant was involved in altercations after the soccer game on March 28, 1979. The defense then called Stanley Brekalo, Stjephan Dizdar and defendant as surrebuttal witnesses. All three testified that defendant was not involved in the fights after the game as Kosic and Mayer had alleged and that defendant was knocked unconscious when he came on the field. Brekalo was one of those whose testimony defendant contended he needed as an additional surrebuttal witness. The other additional surrebuttal witnesses had testified similarly at Stjephan's trial a few days later. The testimony of the additional witnesses would have been cumulative evidence not warranting the grant of a new trial.

■ In his final point appellant challenges the giving of Instruction No. 8 because it was vague, misleading, ambiguous and not in compliance with Rule 28.02. The instruction, MAI-CR 2.12, modified by 19.-04.2, reads as follows:

"INSTRUCTION NO. 8

If you find and believe from the evidence beyond a reasonable doubt:

First, that on April 12, 1979, the defendant, with the aid or attempted aid of Stjephan Dizdar committed the offense of Assault Second Degree on Sulejam Grbic, in that

Second, the defendant, with the aid or attempted aid of Stjephan Dizdar, knowingly caused physical injury to Sulejam Grbic by means of a dangerous instrument, and

Third, that a participant in the crime with the defendant, either before or during the commission of the offense of Assault Second Degree with the purpose of promoting its commission, aided the defendant in committing that offense,

then you will find the defendant guilty of assault in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of assault in the second degree, you will assess and declare the punishment at:

1. Imprisonment in the division of corrections for a term of years fixed by you, but not less than two years and not to exceed five years, or

2. Imprisonment in the St. Louis Medium Security Institution for a term fixed by you, but not to exceed one year."

The thrust of defendant's point is that the failure to include a statement of venue in the instruction and naming the co-defendant brother in the first two paragraphs and then referring to him as "participant" are fatal errors requiring reversal.

First, as to the lack of venue in the instruction, we find *State v. Cobb*, 359 Mo. 373, 221 S.W.2d 745 (1949) to be dispositive. There an instruction failed to require a finding of venue as laid in the information. The court held that venue, like any other fact, may be proven by circumstantial evidence. *Id.* at 747. *See also State v. Valentine*, 506 S.W.2d 406, 410 [4, 5] (Mo.1974). In *Valentine* there was no evidence tending to show that the offense was committed

anywhere other than in the City of St. Louis. On appeal the court found it was not erroneous for the instructions to omit a finding of venue. *Id.* [5]. Similarly here all the facts in the case show that the offense occurred in the City of St. Louis. Mr. Grbic testified on cross-examination that he was living in the City of St. Louis and the assault occurred outside of his apartment. There was no dispute as to location.

As to the use of the term "participant" in paragraph three of the instructions rather than naming Stjephan Dizdar, we find no reversible error. While some of the words in the instruction are transposed, it is essentially the MAI-CR approved instruction. Certain minor deviations from the approved instructions which do not confuse or mislead the jury have been held not to be prejudicial. *State v. Sykes*, 559 S.W.2d 643, 646 [10] (Mo.App.1977). In this case the State's evidence consisted primarily in the testimony of Sulejman Grbic. Nowhere in his testimony can there be found any reference to any participants other than the Dizdar brothers. No evidence implicates others. In light of this it is highly improbable that any of the jurors could have interpreted "participant" to refer to anyone other than Stjephan Dizdar.

MAI 2.10, instructing the jury generally as to responsibility for the conduct of others, was also given just before Instruction No. 8. If there could have been any misunderstanding because of the language of Instruction No. 8, MAI 2.10 certainly should have dispelled it. Accordingly, we find against defendant on this third contention of error.

The judgment is affirmed.

GUNN, P.J., and REINHARD, J., concur.